# SUPREME COURT

OF THE

# STATE OF MISSOURI

AT THE

## APRIL TERM, 1897.

---

### CITY OF SPRINGFIELD v. SMITH, *Appellant.*

#### In Banc, May 4, 1897.

138   645
155   680
138   645
90a   41
138   645
102a ³  60
e102a³  61

1. **Taxation**: CITIES AND TOWNS. That the State may collect an *ad valorem* tax on property used in a calling, and at the same time impose a license tax upon the pursuit of that calling, and may delegate such power to a municipal corporation, is well settled law in this State.

2. ———: POLICE REGULATION: REVENUE. Such power may be exercised by the city either as a police regulation or for the purpose of rasing revenue within the constitutional limitations.

3. **Street Railways**: LICENSE TAX FOR CARS: FINES. An ordinance taxing a street railway $10 for each car operated by it, and imposing a fine on the company for operating its cars without having paid such license tax, is valid, and a conviction of the manager for violating such ordinance was proper.

4. ———: ———: ———: SUBSISTING CONTRACTS. In construing the ordinance of a city conferring upon a company the authority to construct and operate a street railway, the right of the city to exact license fees will not be denied unless such right has been expressly surrendered in the ordinance; and where the contract between the city and the company does not in terms dispense with the payment of a license, the rights of the company are not impaired by a subsequent ordinance requiring such payment.

(645)

5. ———: EXEMPTIONS FROM TAXATION: CONSTRUING ORDINANCES. Exemptions of a street railway and other companies by name from taxation are not to be extended by construction beyond the plain terms of the grants, and ordinances of this kind are to be strictly construed against the companies in favor of the public.

6. ———: ———: ULTRA VIRES. A contract on the part of a city not to levy and collect a tax from a railroad company thereafter, is *ultra vires* and void.

*Transferred from St. Louis Court of Appeals.*

AFFIRMED.

*Stewart, Cunningham & Eliot* for appellant.

(1) The ordinances granting powers and franchises to the Citizens' Railway Company and the Woodland Heights Rapid Transit Improvement Company constitute contracts between the city and those companies, and the benefit of these contracts has passed to the Metropolitan Electric Street Railway Company. *City of Kansas v. Corrigan,* 86 Mo. 67; Cooley, Const. Lim., p. 198; *Dartmouth College v. Woodward,* 4 Wheaton, 518. (2) The ordinances, chapter 15, sections 7 and 21, are void as to the franchises and rights of the Metropolitan Electric Railway Company in that they impair the obligation of the contracts raised by the prior ordinances under article 1, section 10, of the Constitution of the United States. *City of Kansas v. Corrigan, supra; N. Y. v. Railroad,* 32 N. Y. 261; *N. Y. v. Railroad,* 33 N. Y. 22; *Hucless v. Childrey,* 135 U. S. 712; *State v. Herod,* 29 Iowa, 123; *Columbus v. Railroad,* 45 Ohio, 98; *Des Moines v. Railroad,* 41 Iowa, 569; *Los Angeles v. Water Co.,* 61 Cal. 65; *State v. Mayor,* 33 N. J. L. 282. (3) The ordinance of the city of Springfield, chapter 15, section 7, is a revenue ordinance and not one coming within the police power. Cooley, Const. Lim., pp. 201, 494

and 572; *Mayor v. Railroad*, 32 N. Y. 273; *State ex rel.
v. Railroad*, 85 Mo. 263; *City of Kansas v. Corrigan*, 18
Mo. App. 206; *City of St. Louis v. Spiegel*, 75 Mo. 145.
(4) The taxing ordinance is void because it imposes no
duty to pay the tax. Hence, failure to pay is no offense.
It in terms does nothing but exact a new consideration
for the franchise already given. *City of Kansas v. Cor-
rigan*, 86 Mo. 67; State Constitution, art. 10, secs. 1
and 3; *City of St. Louis v. Sternberg*, 69 Mo. 303. (5)
The authority to license given by section 1506 is pri-
marily one for the regulation of the various subjects of
the section under the police power. It is not intended
for revenue. An ordinance framed solely for that pur-
pose is void. R. S. 1889, secs. 1495, 1506. (6) The
prior ordinances of the city constituted in law licenses
to the railway to run its cars, and there was conse-
sequently no violation of chapter 15, section 7. Ra-
palje Law Dictionary, p. 755, and cases cited at sec. 5.

*Len Walker* and *T. W. Silvers* for respondent.

(1) There is nothing in the franchise ordinance
showing that the grantee took it and was to improve
the streets as a consideration for an exemption from
future taxation or police regulation, (2) If it had been
clearly stipulated in the franchise that the grantee was
to improve the streets as a consideration for an exemp-
tion from future taxation or police regulation, the city
would not be bound by such a contract. There is nothing
in the city's charter authorizing its council to make such
a contract. It can not barter away its power to tax or
regulate. Any attempt to do so is *ultra vires*, and against
public policy. *State v. Railroad*, 75 Mo. 208; *Wyandotte
v. Corrigan*, 35 Kan. 21; *New Orleans v. Railroad*, 42 La.
Ann. 4; *City v. Railroad*, 13 Mo. App. 524; Dill. Mun. Cor.
[4 Ed.], secs. 97, 457 and 716; *Kansas City v. Corrigan*, 85

Mo. 279; *Davis v. New York*, 14 N. Y. 506; *Knapp v. Kansas City*, 48 Mo. App. 485; *Sedalia Gas Light Co. v. Mercer*, 48 Mo. App. 644; *State for Use, etc., v. Herod*, 29 Iowa, 123. (3) Every person contracting with the city is bound to take notice of its lawful powers. *Cheeney v. Brookfield*, 60 Mo. 53; *State, etc., v. Herod*, 29 Iowa, 123-126. (4) The franchises granted to the several street car companies mentioned were taken by the grantees, subject to the taxing power and police regulation conferred by the legislature on the city, under section 1506, of the Revised Statutes 1889. Under this section the city had the right to collect a reasonable license fee as a police regulation. It also had the right to collect a tax for revenue. R. S. 1889, sec. 1506; *American Union Express Co. v. St. Joseph*, 66 Mo. 675; *St. Louis v. Sternberg*, 69 Mo. 289; *St. Louis v. Bowler*, 94 Mo. 630; *State v. Smithson*, 106 Mo. 149; *St. Joseph v. Ernst*, 95 Mo. 361; *City v. Bank*, 49 Mo. 576; *St. Louis v. Green*, 70 Mo. 562. (5) It is contended that the city's only power to tax for revenue is under section 1495, Revised Statutes 1889. Under this section the city levies its *ad valorem* property tax. But the power to tax certain trades, callings, professions and occupations is as fully given under section 1506, as the power to tax property under section 1495. The city has the right to resort to both methods. *St. Louis v. Sternberg*, 69 Mo. 289; *Union Express Co. v. City of St. Joseph*, 66 Mo. 675; 2 Dill. Mun. Cor. [4 Ed.], sec. 750, and other authorities under point 3. (6) The legislature has the right to tax the franchise of a corporation chartered by the State. It would have the right to delegate this taxing power to a city for city purposes. Can it be said that the imposition of such a tax would be a violation of, or a restriction on the franchise privilege? *State of N. Y. v. Ins. Co.*, 1 Am. and Eng. Corp. Cases, 363; *Standard Cable Co. v. Attorney-Gen.*, 29 Am.

and Eng. Corp. Cases, 592; *Tide Water Pipe Co. v. Berry*, 33 Am. and Eng. Corp. Cases, 65; *State ex rel., etc., v. State Board of Assessors*, 13 Am. and Eng. Corp. Cases, 404. (7) It is not a violation of section 11, article 10, of the State Constitution to levy a tax on callings. This constitutional restriction as to rates applies only to a property tax. *City of St. Joseph v. Ernst*, 95 Mo. 367.

*T. B. Love* also for respondent.

(1) As to appellant's first contention, that the court erred in declaring the ordinance a police regulation, the following decisions, however, are cited as sustaining the views of the trial court. *State ex rel. v. Hudson*, 78 Mo. 302; *Johnston v. Philadelphia*, 60 Pa. St. 445; *Ferry Co. v. St. Louis;* 107 N. S. 365. (2) While the ordinance states "that the company shall keep the street between their tracks and for two feet outside the outside rail thereof, in the same condition as the remainder of the street is kept by the city," there is nothing in the ordinance to support the idea that this is to be in consideration of the exemption of the company from any other burden or in lieu of any other burden. This case is settled conclusively in favor of respondent by the case of the *City of Kansas v. Corrigan*, 18 Mo. App. 206; *St. Louis v. Speigle*, 75 Mo. 147, and *American Union Express Co. v. St. Joseph*, 66 Mo. 681.

*Stewart, Cunningham & Eliot* for appellant in reply.

(1) Concerning useful trades and employments there is a distinction between the power to license and the power to tax. In such cases where a power to license alone exists, an attempt to use the license as a means of revenue will be ineffective. A power to levy a "license tax" upon a useful employment can not be

used for revenue.   Dill. Mun. Corp., sec. 357; *State v. Bean*, 91 N. C. 554; *State v. Hoboken*, 33 N. J. L. 280; *Cincinnati v. Bryson*, 15 Ohio, 625; Cooley on Taxation, sec. 408; Booth on Street Railway Law, sec. 279; *In re Wan Yin*, 22 Fed. Rep. 701; *Newton v. Atchison*, 31 Kan. 151; *Carroll v. Campbell*, 25 Mo. App. 630; *State ex rel. v. Baker*, 32 Mo. App. 98; *City of Carthage v. Rhodes*, 101 Mo. 175.

BRACE, J.—The plaintiff is a city of the third class, with express power, by ordinance, to grant the right to any person or corporation to make and construct street railroads in any street in said city, and to regulate and control the use thereof (R. S. 1889, sec. 1576); to levy and collect a license tax on "street railroad cars" operated by any corporation (*Ib.*, sec. 1506), and to levy and collect taxes for general revenue purposes on all mixed, personal and real property within the limits of the city taxable according to the laws of the State (*Ib.*, sec. 1495).

The defendant is the general manager and secretary of the Metropolitan Street Railway Co., which by assignment succeeded to all the rights, privileges and franchises granted by the city to the Citizens' Railway Company, and the Woodland Heights Rapid Transit and Improvement Company, and, under the direction and management of the defendant, was operating its street cars in said city at the time the complaint herein was filed, without license, as required by the ordinances of said city, approved April 5, 1892 (chap. 15, art. 1, R. O. 1892), section 7 of which provides *inter alia* that: "No person, corporation or company shall use, run or drive or cause to be used, run or driven for hire, pay, profit or compensation any street car   *   *   *   without a license therefor from the city.   The charges for such license shall be for each street railroad car or

coach of whatever kind ten dollars per year." Section 21 of which imposes a fine of not less than $5 nor more than $100 for the violation of the requirements of section 7.

The defendant was arrested upon a complaint for the violation of this ordinance, fined $100 in the recorder's court, from which he appealed to the Greene county criminal court, where, upon a trial *de novo*, he was again found guilty and his punishment assessed at a fine of $50. From the judgment of which court he appealed to the St. Louis Court of Appeals, by which court the cause was transferred to this court on the ground "that the questions arising for decision involve the construction of certain provisions of the Constitution of this State."

The only defense made to the action is a claim of exemption by the Metropolitan Street Railway Company from the operation of this ordinance by reason of the acceptance by it, and its assignors, of two prior ordinances of the city, approved October 3, 1889, the conditions of which have been duly performed by them. These ordinances were of like tenor and effect, one relating to the Citizens' Street Railway Company, and the other to the said Transit and Improvement Company. The former is as follows:

"Be it ordained by the city council of the city of Springfield as follows:

"Section 1. That the Citizens' Street Railway Company be and is hereby permitted to change its motive power from horse and mule power to electricity motor power as provided for in the acts of the General Assembly of the State of Missouri, approved March 18, 1887.

"Sec. 2. Said Citizens' Street Railway Company shall in the change of its said motive power, do and perform all work upon its superstructure and tracks in

a way and manner so as not to stop or materially interrupt ordinary traffic and travel upon the streets occupied by it until the grades of the streets are established; in all cases where improvements are provided for or contemplated, and all places of change, erection of poles and work necessary for such change of motive power, shall be done under the supervision of the street committee of the city, to the end that said railway may be operated when said motive power is changed without damage to person or property, and in a way to impede ordinary traffic and travel on the streets as little as possible; *provided*, that said street railroad company shall keep the street between their tracks and for two feet outside of the outside rail thereof in the same condition as the remainder of the street is kept by the city.

"Sec. 3. The said street railroad company shall charge not more than 5 cents for a single trip one way, or $1 for 25 trip tickets, and not more than one half the regular fare for children under 12 years of age, and nothing for children under 3 years of age.

"Sec. 4. That inasmuch as the contemplated change of motive power will be attended with expense, it is further provided that this privilege to operate said electric motor power on the streets now occupied by said Citizens' Street Railway Company shall continue for 35 years from the publication of this ordinance. And said Citizens' Railway Company shall have the right and privilege within the present and future corporate limits of the city of Springfield, Missouri, and the additions thereto, of building, erecting, laying, operating, maintaining, repairing and using electric apparatus and appliances, electric machines, engines and apparatus, towers, masts, lamp posts, lamps, posts, poles, wires, pipes and all other machinery, apparatus and appliances necessary and convenient for the use and application of electricity for the purpose of light-

ing and of using, operating, renting and applying such electric machines, electric apparatus and appliances, towers, masts, lamp posts, poles, wires, pipes and apparatus and appliances for the purpose of conveying and supplying electric currents for light and power for hire and use in any and every capacity for which electricity is now or may hereafter be used; and of so using and occupying the streets and alleys of said city of Springfield for said purpose, and for the erection of towers, masts, posts, lamps, poles, etc., thereon, and the laying of wires and pipes therein, and for repairing the same without injury or detriment to private rights or property of individuals or corporations, or without public detriment, except temporary inconvenience caused by the erection of such towers, masts, lamp posts, poles and the laying and running of such wires and pipes and repairing of same—all to be done under 'the police regulations of the city; *provided*, that such change of motive power shall be made within one year after the street improvements on the streets are completed by the city, otherwise the city reserves the right to repeal this ordinance as to the streets occupied by said company upon which such motive power has not been so changed."

It is contended that these ordinances granting powers and franchises to the said two companies, the benefits of which passed to the Metropolitan Street Railway Company, constitute contracts between the city and these companies as to which the said provisions of sections 7 and 21, of article 1, chapter 15, of the ordinances of 1892, are void, under article 1, section 10, of the Constitution of the United States prohibiting laws impairing the obligation of contracts.

It seems to be conceded in the argument of the learned counsel for the defendant that if the right to levy the tax in question is a reasonable exercise of the

police power of the city, then the ordinances of 1889 can afford no defense to the action, since it was not within the power of the legislative authority of the city to exempt the franchise thereby granted from the operation of the governmental power of the city to regulate the use thereof. But it is contended that the ordinance in question is an exercise of the taxing power of the city, for the purposes of revenue, and not of the police power for the purpose of regulation, hence was the subject of contract, and was in fact contracted away so far as the Metropolitan Street Railway Company is concerned by the ordinances of 1889, which it is contended constitute a contract for that purpose within the protection of the provision aforesaid of the Federal Constitution. In support of this contention we are cited to a line of cases of which *Mayor, etc., v. Railroad*, 32 N. Y. 261, is the leading one. But, in the view we take of this case, a review and discussion of those cases in which express power to levy and collect a license tax was not given, is deemed unnecessary. It is beyond question, that by the sections of the statute cited, the plaintiff city was invested with express power not only to tax the property of street railway companies for revenue purposes (sec. 1495) but to tax, license, and regulate the business of running street railroad cars in the city (secs. 1506 and 1576). That the State may collect an *ad valorem* tax on property used in a calling, and at the same time impose a license tax upon the pursuit of that calling, and may delegate such power to a municipal corporation, is well settled law in this State. *Aurora v. McGannon*, 138 Mo. 38, *ante*, and cases cited. Express power having been granted to the city in this instance by section 1506 to levy and collect a license tax on the running of street railroad cars for hire in the streets of the city, there is no necessity of deducing

such right from the general police power of the city.
It may be exercised as granted, either as a police regu-
lation, or for the purpose of raising revenue within
constitutional limitations.   Conceding, for the sake of
argument, that the tax imposed by the ordinance is for
revenue purposes, and not simply for the purpose of
police regulation, and conceding further that the ordi-
nances of 1879 constitute a contract *quoad* the matters
therein treated; if such contract, when properly con-
strued, is an agreement on the part of the city not to
levy and collect such tax thereafter, then such contract
might to that extent be held to be *ultra vires* and void,
upon the authority of *State v. Railroad*, 75 Mo. 208,
and not within the protection of the Federal Constitu-
tion.   There is no necessity, however, for so ruling in
this case for the reason that the so-called contract when
properly construed can not be so interpreted.   The
principles upon which such contracts are to be con-
strued with reference to the taxing power are well set-
tled.   They are to be liberally construed in favor of
the public.   "Grants of this class are not to be ex-
tended by construction beyond the plain terms in
which they are conferred but should be construed
strictly against the corporation, or those claiming
under the grant."   *City of Wyandotte v. Corrigan*, 35
Kan. 21.   They are special privileges, as to which
"nothing is to be taken as conceded but what is given
in unmistakable terms, or by an implication equally
clear.   The affirmative must be shown.   Silence is
negation and doubt is fatal to the claim."   *Fertilizing
Co. v. Hyde Park*, 97 U. S. 659; *Newton v. Commis-
sioners*, 100 U. S. 561; *Rice v. Railroad*, 1 Black. U .S.
358: "Exemptions of this kind are to be strictly con-
trued, the rule being that the right of taxation exists
unless the exemption is expressed in clear and unam-
biguous terms."   *Railroad v. Philadelphia*, 101 U. S.

528; *Delaware Railroad Tax*, 18 Wal. 206. Illustrating the application of these principles, in *Wyandotte v. Corrigan*, 35 Kan. 21, a case quite analogous to the one in hand, it was held, that where an ordinance granting a street railway franchise for twenty-one years providing how and when the road shall be constructed, how it shall connect, that the tracks and the street between the tracks shall be kept in repair and up to grade, and regulating the price to be charged for fare of passengers, such ordinance will not exempt the corporation from reasonable regulation by the city in the operation of the road; nor will it prevent the city from levying and collecting a license tax thereon, by ordinance subsequently passed; which in this case was $100 per annum. In the *City of New Orleans v. Railroad*, 40 La. Ann. 587, it was held that "a contract conferring the right to lay and operate a street railway, without dispensing with the payment of a license, is not impaired by the exaction of such license;" and in that case a license tax of $2,500 per annum was sustained; and going further in the same direction it was held by the same court, in *City of New Orleans v. Railroad*, 42 La. Ann. 4, that "a contract between a municipal corporation and a railroad company by which the latter pays a *bonus* for the franchise therein conferred by the city, can not be construed as conferring an immunity from the payment of license on its business by the company, in the absence of an express stipulation to that effect in the contract." In *Railroad v. Philadelphia*, 101 U. S. 528, it was held that when the charter of a railway company provided that it should pay a license fee of $30 per car per annum required by the ordinances of the city, its charter rights were not impaired by a subsequent statute and ordinance requiring the payment of a license fee of $50 per car per annum. In a recent work on street railway

law (Booth, section 281), the following rule is deduced·
from the authorities: "In construing the charter of a
company conferring authority to construct and operate
a street railway, the right to exact license fees will not
be denied because it has not been expressly reserved in
the grant; and where the contract between the city
and the company does not in terms dispense with the
payment of a license, the rights of the latter are not
impaired by a subsequent ordinance requiring such
payment." The ordinance under which the defend-
ant claims exemption in this case has been set out in
full, and applying to it these principles of construction,
no argument is required to demonstrate that it does
not, by the terms used, nor by any fair implication
therefrom, exempt the street railway company from
the license tax which the city was expressly authorized
to impose, and subject to which power the company
took the franchise therein granted. The cases of the
*State ex rel. v. Railroad*, 85 Mo. 263, and *City of Kansas
v. Corrigan*, 86 Mo. 67, in neither of which was the
question of the power of taxation involved, are not in
point in this case. The ordinance imposing the tax
being valid, it became the duty of the company to take
out the license required thereby, in order to protect its
employes from the penalty imposed for the violation
thereof, and the defendant having been guilty of such
violation by running its cars without such license, was
properly fined. *Wyandotte v. Corrigan*, 35 Kan. 26.

The judgment of the criminal court of Greene
county is therefore affirmed. All concur.