## Bloomington & Normal Railway, Electric & Heating Company v. City of Bloomington.

1. AMENDMENT—*power of court to permit, during trial.* It is within the discretionary power of the trial judge to permit the plaintiff to amend its declaration during the trial of a cause.

2. ORDINANCE—*requiring payment of street car license fee, valid.* A municipality has power to adopt an ordinance requiring the payment by a street car company of a license fee for each and every car regularly operated within the corporate limits of such municipality.

3. ORDINANCE—*when traction company not exempt from regulation by.* In the absence of an express exemption a grant to a traction company is subject to the right of legislative and municipal regulation.

4. ORDINANCE—*how cannot be amended.* An ordinance cannot be amended, suspended or repealed by mere resolution.

5. ASSUMPSIT—*when lies to recover license fee.* Assumpsit lies to

recover license fees imposed by ordinance upon each and every car regularly operated by a traction company.

Action of assumpsit. Appeal from the Circuit Court of McLean County; the Hon. COLOSTIN D. MYERS, Judge, presiding. Heard in this court at the May term, 1905. Affirmed. Opinion filed February 1, 1906.

BARRY & MORRISSEY and DeMANGE & HOBLIT, for appellant.

BEN L. GOODHEART, for appellee; JOHN E. POLLOCK, of counsel.

MR. JUSTICE BAUME delivered the opinion of the court.

This is a suit in assumpsit by appellee against appellant, to recover an annual license fee for 1904 of $25 on each of twelve street cars regularly operated by appellant within the corporate limits of the city of Bloomington. There was a trial by the court, without a jury, and a finding and judgment against appellant for $300.

The right of appellee to recover the license fee in question is predicated upon its ordinances, original and amendatory, as follows:

"1835. Annual License Fee No. 16. Every company, firm or individual operating any street railway in the city of Bloomington shall pay an annual license fee for each and every car owned, controlled or operated by it within the corporate limits of the city, the sum of twenty-five dollars per car; which said sum of money shall be paid in advance on or before the first day of January in each and every year hereafter, and no street car shall be permitted to run or be operated on any public street of said city until the license fee therefor is fully paid."

"Be it ordained by the city council of the city of Bloomington:

"Section 1. That Section 1835, Article 46, of the Revised Ordinances of the City of Bloomington, entitled 'Street Railroads,' be, and the same is hereby amended by striking out the words 'owned, controlled or' in the fourth line of said section and inserting the word 'regularly.'

"Sec. 2. This ordinance shall be in full force and effect from and after its passage."

The original ordinance was passed August 31, 1900, approved September 1, 1900, and went into effect January 1, 1901, and the amendatory ordinance was passed May 16, 1902, and approved May 17, 1902. Said original and amendatory ordinances were set up by appellee in the common counts and in one special count of its declaration.

The General Assembly, by a public act approved February 19, 1867, incorporated "The Bloomington & Normal Horse Railway Company," to continue for the period of fifty years, with authority to construct, maintain and operate a single or double track railway, for the transportation of persons or property, in, over and along any and all streets, highways and bridges within the then or future limits of the city of Bloomington and towns of Bloomington and Normal, and village of Normal, McLean county, Illinois, in such manner as not to obstruct the public travel, and from time to time to change, alter, enlarge and extend the location thereof, and to cross the track or tracks of any railroad on any of its routes: Provided, that said corporation should, before laying down any track or tracks in the city of Bloomington, or village of Normal, procure the consent of the city council of the city of Bloomington, or the corporate authorities of the village of Normal, to the laying down of such track or tracks.

At the time of the passage of this act and until March 8, 1897, the city of Bloomington was organized under a special charter, section 4, chapter 6, of an amendment to which, in force March 7, 1867, authorized the city council to contract with horse railway companies as to the manner of laying down their tracks, and the location of switches, turnouts and depots, and to require them to keep such track in repair between the rails, to designate the grades, to require them to keep their crossings in repair and unobstructed, and to require them to lay their tracks and run their cars so as not to obstruct or hinder ordinary travel.

On March 26, 1867, the city council of the city of Bloomington, by ordinance, granted permission to the Bloomington and Normal Horse Railway Company to lay down and

operate a single track railroad with necessary turnouts in and upon Chestnut street, from Main street to the east line of the Chicago & Alton railway tracks, requiring said company to keep said street in repair three feet six inches each way from the center of the track, and when the street is paved to pave that portion of the street occupied by it, and thereafter the city council of the city of Bloomington, by various other ordinances, gave permission to said company or its assigns to lay down tracks and operate a railway on other streets of said city.

May 21, 1888, the Bloomington City Railway was incorporated under the general law and empowered to build, purchase, and operate street railways and to lease to other persons or corporations and lease other street railways in the city of Bloomington, and from time to time thereafter the city council of said city by ordinances granted to said railway the right to construct, maintain and operate railways on various streets of said city to connect with the railway of the Bloomington & Normal Horse Railway Company.

April 7, 1890, the Bloomington & Normal Horse Railway Company consolidated with the Bloomington City Railway under the name of the Bloomington City Railway, and sold its track, property and franchises to the consolidated company, taking in payment therefor $300,000 par value of the capital stock of the latter company.

Thereafter, the holders of mortgages upon the property and franchises of the Bloomington & Normal Horse Railway Company and the Bloomington City Railway instituted proceedings in the Circuit Court of McLean county to foreclose the same, and on April 30, 1898, a decree of foreclosure and sale thereunder was entered. In pursuance of such decree, all the grants, franchises, rights and property, corporeal and incorporeal, described in the mortgages, whether belonging to the Bloomington & Normal Horse Railway Company, the Bloomington City Railway as an original corporation, or as the consolidated corporation, were on May 31, 1898, by the master in chancery sold

as a united railway system to John Graham and A. E. De-
Mange, for $202,500, and the report of such sale was subse-
quently approved by the court.  The purchasers obtained
possession of the property under the master's deed and
operated the same as a railway, until June 17, 1898, when
the Bloomington and Normal Railway was incorporated
under the general law.  The purchasers thereupon sold the
property to that corporation in exchange for its capital
stock.

May 7, 1902, the Bloomington Electric Light Company
was consolidated with the Bloomington and Normal Rail-
way, and on May 12, 1902, the latter corporation changed
its name to the Bloomington & Normal Railway, Electric
and Heating Company, the appellant here, and also en-
larged the objects of its incorporation.

Some questions are raised upon the rulings of the court
in permitting appellee to amend the common counts by the
addition of the amendatory ordinance, and to file a special
count after the close of the evidence in the case, but the
rulings were so manifestly proper that we shall not con-
sume time or space in their discussion.

It seems to be conceded by counsel for appellee that no
recovery could be had under the original ordinance provid-
ing for the payment of an annual license fee "for each and
every car owned, controlled, or operated" by any corpora-
tion, firm or individual operating a street railway in the
city of Bloomington, because it would amount to a direct
tax upon the property of such corporation, firm or indi-
vidual.  The ordinance, however, as amended requires the
payment of a license fee "for each and every car regularly
operated" by any such corporation, firm or individual, and
is to be upheld, if it may be, under the grant of power by
the legislature to a city, "to license, tax and regulate hack-
men, draymen, omnibus drivers, cabmen, porters, express-
men, and all others pursuing like occupations, and to
prescribe their compensation."  Hurd's Stat. 1903, chap.
24, art. 5, sec. 1, clause 42, page 293.

In Union Traction Co. v. City of Chicago, 199 Ill. 484,

it was held, that the occupation of a corporation operating a street railway is like the occupation of hackmen, omnibus drivers and cabmen, and that by the application of the maxim *ejusdem generis*, the general words in said clause 42, viz.: "all others pursuing like occupations," included street railway companies. The ordinance as amended, imposing a tax upon an occupation carried on as a privilege and not as of right, was within the power of the city council, expressly delegated by the legislature, to enact, and in the absence of affirmative showing to the contrary, the presumption obtains that such ordinance is a reasonable exercise of such power. C. & A. R. R. Co. v. City of Carlinville, 200 Ill. 322; Standard Oil Co. v. City of Danville, 199 Ill. 50; City of Springfield v. Smith, 138 Mo. 645, 37 L. R. A. 446.

It is insisted by counsel for appellant that an action of assumpsit or debt will not lie to recover an occupation license fee or tax, in the absence of proof that the person or corporation following such occupation has taken out the license provided for in the ordinance and thereby impliedly promised to pay for it, and further, that the ordinance in question is nugatory, because no penalty, whereby the ordinance may be made effective, is thereby provided.

The ordinance in question does not purport to require a person or corporation coming within its terms to have a license for each car regularly operated, or that any license shall be issued to such person or corporation by the corporate authorities of the city of Bloomington. In this respect it is to be distinguished from ordinances requiring persons to procure licenses to conduct dram-shops, and imposing penalties for a failure so to do. By the ordinance in question, the duty is imposed upon persons or corporations operating street railways, to pay an annual license fee of $25 for each and every car regularly operated within the limits of the city, and such requirement being a valid exercise of power delegated by the legislature to the city council, we have no doubt it raises an implied promise on the part of the persons or corporations operating street railways to pay

such license fee, so as to authorize a recovery therefor in the form of action here adopted, and that the affixing of a penalty was not necessary to its validity.    C. & E. I. R. R. Co. v. Hines, 82 Ill. App. 488.

After the enactment of the ordinance in question, demand was made upon appellant for the payment of the license fee thereby provided, commencing with January 1, 1901.    Appellant thereupon sent a written communication to the city council, wherein it is claimed that the license fee demanded was burdensome and unreasonable; that the right of appellee to require the payment of a license fee by appellant was of doubtful legality; and offered as a concession, and to avoid litigation, to voluntarily pay $12 per car for every car regularly operated by it, commencing with January 1, 1902.    By a resolution adopted by the city council July 25, 1902, the offer of appellant to pay $12 for each car regularly operated by it, was accepted and in pursuance of such resolution appellant paid to appellee and appellee accepted $12 per car for thirteen cars for the years 1902 and 1903, and appellant tendered to appellee the same amount for the year 1904, which tender was refused. Thereafter, the city council adopted a resolution directing the enforcement of the ordinance requiring the payment by appellant of a license fee of $25 for each car regularly operated by it, and upon the refusal of appellant to pay said sum, this suit was instituted.

It is insisted by counsel for appellant that on January 1, 1904, the liability of appellant to pay, and the duty of appellee to receive $12 per car, became fixed for the year 1904 by the resolution adopted July 25, 1902, and that appellee is bound by that resolution and barred from enforcing the ordinance requiring the payment of a license fee of $25 for each car.    This insistence of appellant is not tenable.    It is not within the power of the city council to amend, suspend or repeal an ordinance by mere resolution. City of Paxton v. Bogardus, 201 Ill. 628; Hibbard & Co. v. City of Chicago, 173 Ill. 91.

It is further insisted by appellant that its right to operate

street cars in the city of Bloomington was derived directly from the legislature of the State under the grant to the Bloomington & Normal Horse Railway Company heretofore mentioned; that the only condition of said grant was, that said company should procure the consent of appellee's city council before laying down its tracks upon the streets; that the various consent ordinances enacted by the city council, and in pursuance of which the said company laid down its tracks in the streets and operated its railway, reserved to appellee no right to impose a license fee; that the legislative grant and the consent ordinances of the city of Bloomington constituted irrevocable contracts and created property rights, which were the subject of sale and mortgage; that by the sale, under decree of foreclosure, of the property and franchises of the said company the purchaser succeeded to such contract and property rights; that the like right inured to the several companies thereafter incorporated and consolidated; and that the enforcement of the ordinance in question will impair the obligation of such contract and deprive appellant of its property right.

In the view we are disposed to take, it may be conceded that upon the consolidation of the several corporations, of which appellant is the successor, the consolidated corporation, whether existing prior to the consolidation, or then newly created, succeeded to all the rights and franchises of its constituent corporation, enlarged by the rights and franchises of such consolidated corporation. The legislative grant to the Bloomington & Normal Horse Railway Company contained no express exemption to that company from the operation of such regulative restrictions and burdens as the legislature, or appellee exercising delegated power therefrom, might properly impose, and in the absence of such express exemption the grant must be held to have been subject to the right of the legislature to impose, or authorize the imposition of, such reasonable and proper restrictions and burdens as should be provided for by the organic law of the state. Wiggins Ferry Co. v. E. St. Louis, 102 Ill. 560; Ill. Mut. Fire Ins. Co. v. City of Peoria, 29 Ill.

180; Frankford, etc., Ry. Co. v. Philadelphia, 58 Pa. St. 119, 98 Am. Dec. 242; City of Springfield v. Smith, *supra.*

Furthermore, the Bloomington City Railway, incorporated May 21, 1888, and the Bloomington and Normal Railway, incorporated June 17, 1898, to which corporations appellant succeeded, were incorporated under the General Incorporation Act, by section 9 of which act it is provided as follows: "The General Assembly shall, at all times, have power to prescribe such regulations and provisions as it may deem advisable, which regulations and provisions shall be binding on any and all corporations formed under the provisions of this act; *And, provided, further,* that this act shall not be held to revive or extend any private charter or law heretofore granted or passed concerning any corporations." Hurd's Stat. 1903, p. 473. Appellant, therefore, accepted its incorporation subject to the legislative right of control and regulation (Union Traction Co. v. City of Chicago, *supra*), and this right appellee, by virtue of the power delegated to it, exercised in the enactment of the ordinance in question. We are of opinion that the enactment of the ordinance was a valid exercise by appellee of its delegated power; that it is applicable to appellant as a corporation operating a street railway, and that appellant is liable to pay the license fee thereby imposed.

Other questions are raised by appellant, but as we do not deem them of controlling importance, we refrain from extending this opinion by further discussion.

The judgment of the Circuit Court is affirmed.

*Affirmed.*