Submitted on briefs June 29, affirmed July 13, 1926.

# STATE EX REL. STANDARD GOLD MINING CO. *v.* W. E. CREWS.

### (247 Pac. 775.)

**Mines and Minerals.**

1. Under Sections 6890 to 6892, Or. L., mining corporations which had no existence preceding year *held* not required to pay more than $10 for annual license, though its report did not affirmatively show that output did not exceed $1,000.

**Statutes.**

2. Object in construing statute is to determine intention of legislature.

**Statutes.**

3. Rules of construction of statutes may only be invoked where language is ambiguous.

**Appeal and Error—Case Presented on Appeal from Order for Issuance of License to Corporation Held not Moot After Expiration of Year for Which License was Sought, Where Corporation Commissioner Threatened to Enforce Penalties for Failure to Obtain License (§§ 6883, 6885, 6890–6892, Or. L.).**

4. Where corporation commissioner refused to issue annual license upon tender of $10 fee, under Sections 6890 to 6892, Or. L., plaintiff's right to compel issuance of license *held* not moot, though year for which license was sought had ended before appeal was determined, where commissioner was threatening to collect fee and penalty under Section 6883 and to deny corporation access to courts under Section 6885.

**Mandamus—Mandamus will Lie to Compel Issuance of Receipt for Fee as Evidence of "License" Entitling Mining Corporation to Do Business (§ 876, Or. L.).**

5. Mining corporation is licensed to transact business upon making report required by law and paying annual license fee, and it is thereupon entitled to receipt from corporation commissioner as evidence of license, under Section 876, Or. L., to compel issuance of which *mandamus* will lie.

**Taxation.**

6. Exacting license fees from corporations does not exempt their property from taxation for general revenue purposes.

---

Appeal and Error, 4 C. J., p. 649, n. 35.
Licenses, 37 C. J., p. 250, n. 62.
Mandamus, 38 C. J., p. 742, n. 25.
Statutes, 36 Cyc., p. 1106, n. 29, p. 1107, n. 31, p. 1140, n. 64.

2. Legislative intent as primary consideration in construing statutes, see note in 5 L. R. A. 342. See, also, 25 R. C. L. 960.
3. See 25 R. C. L. 957.
5. See 18 R. C. L. 292.

From Marion: L. H. McMahan, Judge.

In Banc.

This is an action brought to require the defendant corporation commissioner to issue to the relator an annual license for the fiscal year 1924–25. The Circuit Court granted the petition commanding the defendant to issue the license as demanded and the defendant appeals. The relator was organized as a corporation February 2, 1924, with an authorized capital stock of $100,000. It filed its report in June, 1924, for the calendar year of 1923. The statute, Sections 6890 to 6892, Or. L. (Laws 1905, Chap. 204), requires mining corporations to file each year during the month of June and on or before the first day of July a statement upon blanks to be supplied by the corporation commissioner and sworn to by one of its officers "setting forth in detail the name of the corporation, the location of its principal office, the name of the president, secretary, and treasurer thereof, with the postoffice address of each, the date of the annual election of officers and directors of such corporation, the amount of the authorized capital stock, the number of shares and the par value of each share, the amount of capital stock subscribed, the amount of capital stock issued, and the amount of capital stock paid up, the amount of its properties in this state and where the same are located; also stating in general terms the amount of work done thereon and improvements made thereon since the time of filing the last annual report, together with a statement of the amount and value of the annual output or products of the mines, * * between the first day of January and the thirty-first day of December of the year pre-

ceding, and that said corporation is not engaged in or transacting any other business except that of locating, prospecting, developing or operating mines for precious metals, * * and any such mining or oil corporation whose annual output or products shall not exceed in value the sum of $1,000, shall, if such above provided statement is filed in the office of the Secretary of State during the month of June, and on or before the first day of July of each year, thereupon be exempt from the payment of the annual license fee as now provided by law; but in lieu thereof shall pay an annual license fee of $10; * * ." The relator filed a report complying with this statute to which defendant makes no objection, except that it did not state specifically the output for the year 1923 but does state that its output did not exceed $1,000. The defendant demurred to the alternative writ. The demurrer was overruled and judgment rendered and entered because defendant refused to plead further. The alternative writ contains the following allegation:

"1. That the relator is a corporation organized under and in pursuance of the laws of this state for the purpose of engaging in the business of mining for precious metals and is engaged in that business only; that its capital stock is $100,000 and that a certificate of incorporation was issued to it by the corporation commissioner on February 2, 1924.

"2. That the appellant is the corporation commissioner of the state of Oregon.

"3. That in the month of June, 1924, and before the 1st day of July, 1924, said mining company filed with said corporation commissioner a report on a blank furnished by him, * * ."

(Here follows a *verbatim* copy of the annual report to the Corporation Department.)

The contention of the defendant is that inasmuch as the corporation was not in existence during the year 1923, that being the period covered by the report, it could not show that its output did not exceed $1,000 and therefore could not comply with the provision of the statute entitling it to exemption granted by the statute, to wit: The payment of $10 for the annual license instead of $50 which is the fee prescribed in the general law exacting a fee from corporations transacting business in this state.

It is also contended by the defendant that inasmuch as the year 1924–25 has expired, the case presented is moot and for that reason the demurrer should have been sustained. It is also contended that the statute does not require the issuance of a license and that *mandamus* will not lie to compel the execution of a vain or useless thing.                              Affirmed.

For appellant there was a brief over the names of *Mr. I. H. Van Winkle,* Attorney General, and *Mr. J. B. Hosford,* Assistant Attorney General.

For respondent there was a brief over the name of *Mr. John Van Zante.*

COSHOW, J.—1. This case involves the construction of Sections 6890 to 6892. In 1903 the legislature passed an act fixing a fee for organizing corporations and exacting an annual license fee: Laws 1903, p. 39. In 1905 the legislature enacted a statute exempting mining corporations from paying the license fee required by said act of 1905 where the output of such corporations for the preceding calendar year did not exceed $1,000 but in lieu of such fee to pay the sum of $10. The relator claims the benefit

of the act of 1905. The defendant denied it the benefit of that act, as we understand the issue presented, solely because the relator could not comply with that part of the statute requiring a statement of the amount of work done thereon, improvements made thereon since the time of filing the last annual report and an affirmative showing that the output of said corporation did not exceed $1,000 for the calendar year preceding the date of filing the report. Since the relator was not incorporated until 1924, it was impossible to make a statement showing either the amount of work done thereon, improvements made thereon, or its output for the sole reason that no work or improvements were made and it had no output. We think that the report filed by the relator in June, 1924, did show affirmatively that it did no work, made no improvements, and had no output or products. The defendant relies on the rule of law stated thus in his brief:

"Those who seek shelter under an exemption law must present a clear case, free from doubt, as such laws, being in derogation of a general rule, must be strictly construed against the person claiming the exemption and in favor of the public."

*City of New Orleans* v. *Robira,* 42 La. Ann. 1098 (8 South. 402, 11 L. R. A. 141); *Springfield* v. *Smith,* 138 Mo. 645 (40 S. W. 757, 60 Am. St. Rep. 569, 37 L. R. A. 448); *Rice* v. *Minnesota & N. W. R. Co.,* 66 U. S. 358 (17 L. Ed. 147); *Northwestern Fertilizing Co.* v. *Hyde Park,* 97 U. S. 659 (24 L. Ed. 1036); *Newton.* v. *Mahoning County Commrs.,* 100 U. S. 561 (25 L. Ed. 711).

Taking the statute as a whole, we think the intention of the legislature was to exempt mining corpora-

tions whose products did not exceed $1,000 for the year preceding the June of any year from paying the graduated tax fixed by the Statute of 1903, unless and until its production shall exceed $1,000. We are convinced that that part of Section 6891 reading thus "The annual license fee required by this act shall be paid in advance for the fiscal year beginning July 1st of each year, and in case of new corporations formed during the fiscal year, the first year's fee shall be proportioned to such fraction of a year," expresses the intention of the legislature to the effect that a new mining corporation shall pay such proportion of the $10 license fee as the part of the fiscal year after being incorporated bears to the entire year. The language is: "The annual license fee required by this act." This act refers to the act of 1905 in which that language appears. The act of 1905 by its terms does not amend the act of 1903. The corporation commissioner of the state is not authorized therefore to exact more than $10 for the first fiscal year of a mining corporation. It follows logically, in our opinion, that, when the annual report shows that a mining corporation not in existence during the calendar year preceding the June when its report has been filed had no output, no more than $10 can be exacted lawfully for the annual license fee. Products of no value cannot be held to exceed $1,000. It is only mining corporations with an output in excess of $1,000 that are required to pay more than $10 for an annual license which is graduated according to its capital stock. It is not contended that the annual report of the relator does not comply with the statute in every particular, except that it is claimed by the defendant it does not

affirmatively show that its output did not exceed $1,000 for the year 1923.  It is conceded that it is impossible for the report to show that, because it was not in existence and had no output.  We think the construction of the defendant is too literal.

" * * the letter killeth, but the spirit giveth life." 2 Corin. iii: 6.

2, 3.  The object in construing a statute is always to determine the intention of the legislature.  Where the language of the act is clear and plain it is not necessary to invoke special rules of construction.  It is only where the language used by the legislature is ambiguous and the meaning doubtful that it is necessary to resort to rules of construction.

"The practical construction given to a doubtful statute by the department or officers whose duty it is to carry it into execution is entitled to great weight and will not be disregarded or overturned except for cogent reasons, and unless it is clear that such construction is erroneous."  2 Lewis' Sutherland on Statutory Construction, 889, § 474.

*Kelly* v. *Multnomah County,* 18 Or. 356, 359 (22 Pac. 1110).  The language of the act of 1905, quoted above, requiring the annual license fee to be paid "in advance for the fiscal year beginning July 1st of each year, and in case a new corporation is formed during the fiscal year the first year's fee shall be proportioned to such fraction of the year," clearly indicates the intention of the legislature to require a fee of $10 only, unless and until the annual output or products of said mining corporation exceeds $1,000 during the preceding calendar year.  The logic of the defendant would condemn the report of relator and render it liable to penalty for delinquency because it fails to show its property for 1923.  Not being in

existence it had no property as it had no output. But no objection is made to the report on that account.

4. The case presented on appeal is not moot. The relator filed its report during the month of June, 1924, as required by law. With that report it tendered the $10 required by law as an annual license fee. The defendant refused to accept said $10 and to issue the receipt required therefor. It threatens to collect from the relator a fee of $50 and $100 as the penalty prescribed by Or. L., Section 6883, and to deny to the relator access to the courts as prescribed in Or. L., Section 6885. The relator, therefore, is vitally interested in having the receipt for the $10 tendered to the defendant June, 1924, issued in order to prevent the consequences of the alleged delinquency from attaching.

5. It is argued by the defendant that the statute does not require the issuance of a license; that the petition, therefore, of the relator demands that a vain and useless thing be required of the defendant. A formal document as evidence of a license is not required by the statute. Such document, however, would not be a license. The relator is licensed to transact business in this state when it makes the report required by law and pays the annual license fee. Those acts constitute its license to transact business in this state. A formal document or a receipt for the fee would be evidence of such license. The relator is entitled to the receipt of the defendant: Or. L., Section 876.

6. The case of *Park Bank* v. *Wood,* 24 N. Y. 93, 96, is not in point. That case involved the question of different modes of assessing the complaining bank for the purpose of taxation. It did not involve a

question of license fees exacted from a corporation created by a state or by a foreign jurisdiction in order to transact business in this state. Exacting license fees from corporations does not exempt their property from taxation for general revenue purposes. The relator is subject to taxation the same as other property owners in this state. Its property is presumably on the tax-roll of the county in which its property is situated. No provision was made in the New York statute for assessing the property based on profits for part of a year as does the Oregon statute under consideration.

The judgment of the Circuit Court is affirmed.

AFFIRMED.