[Sac. No. 3136. In Bank.—May 4, 1922.]

## COUNTY OF TULARE, Respondent, v. CITY OF DINUBA (a Municipal Corporation), Defendant; SAN JOAQUIN LIGHT AND POWER CORPORATION (a Corporation), Defendant and Appellant.

[1] CONSTITUTIONAL LAW—FRANCHISES—ABROGATION OF TAXATION—POWER OF STATE.—The power of the state exists, whether by constitutional amendment or legislative enactment, to abrogate or alter the nature or amount of any charges for franchises in favor of municipalities or other political agencies of the state for public purposes, whether as taxes, licenses, or tolls.

[2] ID.—VESTED RIGHTS—SUBSEQUENT IMPAIRMENT.—The vested rights of an individual or corporation under an executed franchise are contractual and such rights cannot be impaired by any subsequent enactment of the state, under the clause of the federal constitution forbidding the enactment by the states of any law impairing the obligation of contracts.

[3] CONSTITUTIONAL LAW—IMPAIRMENT OF OBLIGATION OF CONTRACTS—RIGHTS ACCRUING TO STATE AGENCIES IN GOVERNMENTAL CAPACITIES—WAIVER.—The inhibition of section 10 of article I of the federal constitution does not extend to the waiver or modification of any rights accruing to the agencies of the state in their governmental capacity by action of the people through constitutional amendments or by legislative enactment.

[4] TAXATION — BROUGHTON ACT — CONSTITUTIONAL AMENDMENT — EFFECT OF.—Section 14 of article XIII of the state constitution adopted since the Broughton Act, which provides for a method of taxation of corporations "which shall be in lieu of all other taxes and licenses, state, county or municipal," did not effect a repeal of the two per centum gross receipts charge of the Broughton Act for the use, operation, or possession of a franchise granted thereunder (Stats. 1905, p. 777), since the constitutional provision and legislation thereunder are specifically directed and limited to the regulation of taxes and licenses, and the gross receipt charge under the Broughton Act is neither a tax nor a license, but a toll which the holder of the franchise undertakes to pay for the privilege of using the highway.

[5] BROUGHTON ACT—GROSS RECEIPTS—LIMITATION OF PERCENTAGE—USE OF FRANCHISE. — A county which under the Broughton Act

---

2. Privilege of using street as a contract within the constitutional provision against impairing the obligation of contracts, notes, 3 Ann. Cas. 88, 986; 6 Ann. Cas. 259, 601; 8 Ann. Cas. 622; Ann. Cas. 1915A, 899, 911, 926; 50 L. R. A. 142; L. R. A. 1918E, 892.

has awarded to a corporation a franchise authorizing the use of the county's highways for the transmission of electricity is not entitled to any part of the corporation's "gross receipts" attributable to the use, operation, or possession of the power-houses and private rights of way, since the percentage payment provided by such act is not a tax upon the property of the corporation, nor a license charge for the privilege of operating its business, but is a compensation for the use of the portions of the highway covered by the franchise easement, and it is limited to a percentage of such total gross receipts as can be shown to have arisen from the use of the franchise.

[6] ID.—FRANCHISES IN SEVERAL COUNTIES—DIVISION OF PERCENTAGE—CONSTRUCTION OF ACT.—Where a corporation's system extends into two or more counties, a reasonable construction of the language of the Broughton Act that the holder of a franchise shall pay "two per centum of the gross annual receipts" arising from "the use, operation or possession" of the franchise is that each county is entitled to its percentage of the gross earnings arising from the use of its highway, in the proportion that the receipts arising from the use of such highways bears to the receipts attributable to all the rights of way of the entire system.

[7] ID. — ESTIMATION OF GROSS RECEIPTS — POLICY OF ACT. — The obvious policy of the Broughton Act is to treat the public utility in the entire territory occupied as a single entity, and to distribute to each franchise wherever situated its two per centum of whatever proportion of the gross receipts can be traced to its exclusive use, and as to all receipts arising from the indistinguishable use of all rights of way in the system, making the division in proportion to the respective mileage of the various parts.

APPEAL from a judgment of the Superior Court of Tulare County.   W. B. Wallace, Judge.   Reversed.

The facts are stated in the opinion of the court.

Short, Lindsay & Woolley for Appellant.

Fred C. Scott, W. W. Middlecoff and I. H. Ham for Respondent.

Butler & Van Dyke, Roy V. Reppy, B. F. Woodard, E. W. Cunningham, George E. Trowbridge, I. B. Potter, Newman Jones and Henry W. Coil, *Amici Curiae.*

SLOANE, J.—This action was brought by the county of Tulare to recover from the San Joaquin Light and Power

Company, a public service corporation, two per cent of the annual gross receipts for the use and operation of a franchise over and upon the public highways of that county, pursuant to the provisions of the act of the legislature known as the Broughton Act.

This legislation was enacted in 1905 (Stats. 1905, p. 777), and provides for the granting of franchises over streets and highways to the highest bidders by boards of supervisors and other governing bodies of counties and municipalities. The particular provision subject to construction and interpretation on this appeal is that part of section 3 of the act which declares that the successful bidder shall after the first five years "pay to the county or municipality two per centum of the gross annual receipts of the person, partnership or corporation to whom the franchise is awarded, *arising from its use, operation or possession.*"

The controversy arises over the meaning and application of the words we have quoted in italics. It is unnecessary to set out the further terms and provisions of the act other than may be hereinafter required in the interpretation of the provision quoted above.

It is sufficient to say that in conformity to the authority of the act proceedings were had under which the defendant corporation acquired from said county a fifty-year franchise authorizing the use of each and all of the public avenues and highways of the county of Tulare for the purpose of constructing and operating electric lines and other appliances for the conveyance and distribution of electricity for various uses.

In pursuance of the rights so acquired the defendant corporation constructed, and has since owned and operated, a system of poles and wires for transmitting electric heat, power, and light, and telephone service, along, upon, and across certain of the public avenues and highways of the county of Tulare, and has ever since been engaged in the business of transmitting and selling such electricity to the general public in Tulare County, and also through similar connecting systems owned and operated by it, in Fresno and Kern Counties, to the inhabitants of the counties named.

This action was brought to recover two per cent of the defendant's gross receipts for the years 1911, 1912, and 1913, not only for all sales of electricity in Tulare County,

but likewise from sales of electricity conveyed through the Tulare system to and through the connecting systems in Fresno and Kern Counties. Pending the trial all claim to the percentage from receipts from Fresno and Kern Counties was waived by the plaintiff county. As a result of the trial the plaintiff recovered the judgment appealed from for $5,066.29, being the full demand of two per centum of all amounts received from the defendant's distributing system in Tulare County.

It appears without dispute that the defendant's distributing system in Tulare County consists of lines of transmission along 189.08 miles of avenues and highways covered by the franchises under consideration, and 91.07 miles over and upon private rights of way acquired and owned by the defendant and not included in the franchise.

The appellant corporation, and *amici curiae* appearing in the same behalf, attack the judgment on the following grounds:

1. That section 14 of article XIII of the state constitution, adopted since the Broughton Act, and which provides for a method of taxation of corporations "which shall be in lieu of all other taxes and licenses, state, county or municipal," effected a repeal of the two per centum gross receipts charge of the Broughton Act.

2. That the provision for payment of the two per cent gross annual revenue arising from the "use, operation or possession" of the franchise is void for indefiniteness and uncertainty.

3. That if the gross receipts from any given part of an electric distributing system extending through several counties can be ascertained as arising from the use of the franchise in one of the counties, it should be confined to the part of the system occupying the streets and avenues in use under the franchise from such county, and not include receipts arising from the part of the system over and upon private easements.

### THE QUESTION OF REPEAL.

If the payment of a percentage of gross receipts is imposed as a tax or license, there would be much force to appellant's contention of its repeal or abrogation under the tax amendment to the state constitution. The amend-

ment referred to was adopted in 1910, long after the Broughton Act and the franchise upon which this action is brought went into effect. It provides an exclusive method of taxation by the state of corporations and corporate franchises, enumerating as subject to its provisions "telegraph companies, telephone companies, companies engaged in the transmission or sale of gas or electricity . . . and taxes upon all franchises of every kind and nature," and directs that such revenues "shall be entirely and exclusively for state purposes."

Subsection (a) then provides that all such companies shall "annually pay to the state a tax upon their franchises, roadways, roadbeds, rails, rolling stock, poles, wires, pipes, conduits, rights of way and other property or any part thereof used exclusively in the operation of their business."

It is next provided that: "Such taxes shall be in lieu of all other taxes and licenses, state, county and municipal, upon the property above enumerated of such companies except as otherwise in this section provided"; and the exception is: "that nothing herein shall be construed to release any such company from the payment of any amount agreed to be paid or required by law to be paid for any special privilege or franchise granted by any of the municipal authorities of this state."

The state legislature at the 1911 session passed an act to carry into effect the terms of this constitutional amendment (Stats. 1911, p. 530) in which it repeats the language of the constitution, above quoted, and further declares that "the word 'municipal' as used in this act shall apply to incorporated towns and cities formed under Article XI of the Constitution of this State and to none other." (Stats. 1911, p. 530; Stats. 1913, p. 3; Stats. 1915, p. 3.) A similar limitation of the word municipal in practically the same language was adopted by the amendment of 1917 (Stats. 1917, p. 337; Pol. Code, sec. 3664a.) This declaration of the legislature limiting the application of the word "municipal" is merely in line with distinctions in the use of the term recognized in many decisions of this court. (*In re Werner*, 129 Cal. 567 [62 Pac. 97]; *People* v. *McFadden*, 81 Cal. 489 [15 Am. St. Rep. 66, 22 Pac. 851]; *Sacramento Co.* v. *Chambers*, 33 Cal. App. 142 [164 Pac.

613]; *Turlock Irr. Dist.* v. *White,* 186 Cal. 183 [17 A. L. R. 72, 198 Pac. 1060].)

Appellant argues that this reservation to cities and towns to the exclusion of other political agencies of the state by the above-quoted provisions of the constitution of any payments required by law or contract to be paid for any special privilege or franchise granted by municipal authority takes the county from the operation of such reservation, and terminates the right to such franchise charge by counties.

[1] It can hardly be questioned that the power of the state exists, whether by constitutional amendment or legislative enactment, to abrogate or alter the nature or amount of any charges for franchises in favor of municipalities or other political agencies of the state for public purposes, whether as taxes, licenses, or tolls. [2] It is, of course, established law that the vested rights of an individual or corporation under an executed franchise are contractual and that such rights cannot be impaired by any subsequent enactment of the state, under the contract clause of the federal constitution, section 10, article I, forbidding the enactment by the states of any law impairing the obligation of contracts. (*Matter of Russell,* 163 Cal. 668 [Ann. Cas. 1914A, 152, 126 Pac. 875]; *Russell* v. *Sebastian,* 233 U. S. 195 [Ann. Cas. 1914C, 1282, L. R. A. 1918E, 882, 58 L. Ed. 912, 34 Sup. Ct. Rep. 517, see, also, Rose's U. S. Notes]; *City of Oakland* v. *Great Western Power Co.,* 186 Cal. 570 [200 Pac. 395].)

[3] But the inhibition of this provision of the federal constitution does not extend to the waiver or modification of any rights accruing to the agencies of the state in their governmental capacity by action of the people through constitutional amendments or by legislative enactment. (*Blanding* v. *Barr,* 13 Cal. 343; 28 Cyc. 310; *Creighton* v. *San Francisco,* 42 Cal. 446; *Beals* v. *Amador Co.,* 35 Cal. 624.)

Conceding, then, the power of the state to terminate the right of a county to enforce the collection of a percentage of the corporation's receipts under the franchise in question and that the right of counties to continue to make such collections is not preserved by such proviso, does the tax

amendment to the state constitution and the legislation under it effect that result?

[4] The answer is that the tax amendment and legislation thereunder is specifically directed and limited to the regulation of taxes and licenses, and the gross receipt charge under the Broughton Act is neither a tax nor a license, but is obviously a toll or charge which the holder of the franchise undertakes to pay as part of the consideration for the privilege of using the avenues and highways occupied by the public utility just as it obligates itself to pay the amount of its cash offer as the highest bidder for the franchise.

It is purely a matter of contract. While it is true that the payment is required by law as a condition of the franchise grant, it is a matter of option with the applicant whether he will accept the franchise on those terms. His obligation to pay is not imposed by law but by his acceptance of the franchise.

Just why the matter of continuing in force the payment of ''any amount agreed to be paid or required by law to be paid for any special privilege or franchise granted by any of the municipal authorities of the state'' should have been incorporated in the tax amendment legislation, if such charge is not a tax or license, is a matter of speculation. But such reference cannot change or establish the nature of such charges. The exclusive right reserved by the state is confined to ''taxes and licenses,'' and cannot be enlarged by a mere proviso referring to other classes of liabilities, and exempting them from the operation of the law. They were already exempted because not included.

It must be conceded that the respondent has apparently dealt with the percentage charge throughout its argument as a tax or license, and appellant contends that it cannot be otherwise considered consistently with respondent's claim to its percentage upon all the revenue collected in the county from defendant's system whether arising from the use of the public highways or from defendant's private rights of way.

There is nothing, however, in such considerations to justify this court in refusing to determine the true nature of the obligation involved in the action.

We are of the opinion that whatever right was acquired by the county of Tulare to a portion of the gross receipts of the defendant corporation by virtue of this franchise remains unimpaired.

## IS THE BROUGHTON ACT VOID FOR INDEFINITE-NESS?

We come next to appellant's second point, that the provision for paying to the county of Tulare a percentage of the gross annual receipts "arising from the use, operation or possession," of the easement in the public highways, is so obscure and uncertain as to be incapable of ascertainment.

Without doubt, the Broughton Act contains inconsistencies and uncertainties, particularly in its enlarged application to counties. Earlier legislation along the same line was confined to strictly municipal corporations, and was enacted at a period when the public utilities in the nature of street railways and gas and electric systems were generally confined in their operations to the single municipal territory.

At the present time such agencies commonly extend beyond the municipal limits, and frequently cover several counties with their lines and distributing systems. In the case before us the defendant corporation has several electrical generating plants distributed over three or four counties, and with its lines of poles and wires extending in connecting systems throughout Tulare, Fresno, Kern, and perhaps other counties, with franchises over the public highways of each of said counties, and its electric current passing back and forth indiscriminately from one or the other of its power-houses over the entire system.

It may happen that a power-house is located many miles, and across intervening counties, from the territory of distribution to the consumer. Its conduit line may extend through an entire county, over a franchise for the use of a public highway, without delivery to a single customer. On the other hand, such generating plant may be within a few rods of the county line and use only so much of a county franchise as will carry its electric current to the adjoining county. Such generating plant may be just outside a municipal corporation, and distribute its entire

product within such corporation. Its lines may extend for miles over private rights of way not subject to franchise regulations or may pass at frequent intervals from public highway to private easements and back again to highway, as in the instant case.

It may be readily seen that the adjustment of the payments arising under the various county and municipal franchises will raise serious complications as to what portion of the revenue accrues from any given franchise; and all we have to guide us is the provision of the statute that the payment required shall be two per cent of the gross annual receipts of the holder of the franchise *"arising from its use, operation or possession."*

There are other particulars in which it is extremely difficult to adjust the terms of the act in all cases to the fulfillment of its various purposes, particularly in carrying out the requirement that no condition shall be permitted which shall in anywise favor one person, firm, or corporation as against another in bidding for a franchise.

We are not concerned, however, in this case with any feature of the act other than that which attempts to determine the measure for computing the source and amount of gross receipts from which the two per cent payment is to be made. The defendant here admittedly holds and uses a franchise over 189.8 miles of the public highways of Tulare County; and is obligated to pay a certain per cent of its annual gross income to such county, if we can ascertain under the statute what the gross income referred to is, and how it is to be estimated.

The supreme court of Missouri, in passing upon the validity of legislation substantially the same as the Broughton Act, which provided for a payment of a percentage of the gross receipts "derived from such occupation and use" of a highway franchise, in the case of *State ex rel. Crow* v. *West Side State Ry. Co.*, 146 Mo. 155 [47 S. W. 959], involving a use of the public roads for a railroad right of way, held that the act was void for uncertainty. The court says as to the receipts "derived from such use and occupation," that (as under the Broughton Act) "The provision is made equally applicable to each privilege or franchise mentioned. They are all placed upon the same footing, and, under the act must be disposed of in the

same way. The legislature evidently intended to make no discrimination. It will be seen at a glance that it is utterly impossible to give this act any reasonable or sensible construction as applied to railroads. If it means that the company must pay at least two per cent. of its entire gross earnings . . . to each municipality, over whose streets it may be built, and to each county, whose highways it may cross, the railway company, in many instances, will be compelled to pay more than its receipts for the right to build its road over the highways and through the cities along its way. If, as some of the counsel suggest, the percentage should be computed only upon the gross receipts of that part of the road located upon the streets of the city, or across the highways, as the case may be, then we are met by the fact that there is no method provided (if it is possible to suggest one), by which the actual gross receipts of that particular part of the road can be ascertained. Such receipts will not necessarily be in the same proportion to the entire earnings as the length of the road upon the highways or streets may be to the entire length of such railroad. Travel may be greater or less upon one part of the road than upon another. Such a rule would be an arbitrary one, which the act has not prescribed, and which will not comply with its terms.''

Other inconsistencies which the court deems irreconcilable with the spirit and purpose of the act are pointed out in this opinion, but we do not consider them important to the issue before us. It must be conceded that all these difficulties in fixing the amount to be charged to the holder of the franchise on a given and limited part of the highways used by the public utility, with others not there discussed, exist in this case. The gross receipts of this defendant accrue from two distinct agencies. One is the generating plants or power-houses of the company, located in three separate counties; the other is the distributing system, consisting of poles and wires extending throughout the three counties, partly upon and over streets and highways and covered by various county and municipal franchises, and partly over private easements owned by the company.

[5] The corporation's gross receipts, to refer to the language of the act, *arise* from ''the use, operation or pos-

session," not alone of these franchises over the streets and highways, but likewise from the use, operation, or possession of the power-houses and private rights of way. The two last named are not subject to any franchise charges and the county or municipality is not entitled under the law to any part of the gross receipts attributable to these privately owned parts of the system. The percentage payment is not a tax upon the property of the corporation, nor a license charge for the privilege of operating its business. It is a compensation for the use of the portions of the highway covered by the franchise easement, and it is limited to such percentage of the total gross receipts as can be shown to have arisen from the use of the franchise.

It can no more be said that the receipts from electricity sold in the county of Tulare arise from the possession or use of the highways covered by the county franchise than from. the possession or use of the private rights of way, or from the use of the connecting distributing lines through which the electric current is received from an adjoining county.

The absurdity of the position that any integral part of an electric distributing system like this is entitled to credit for the whole of the earnings from deliveries and sales in a given county or municipality when a large part of such service is over parts of the system not subject to such franchise permit may be shown by various illustrations.

Let us suppose that the only part of the system which is in Tulare County consists of a main transmission line upon a single highway traversing the entire width of the county, delivering no part of the current in that county, but carrying it for distribution and sale to an adjoining county. On the suggested theory, Tulare County obviously could not collect a cent of gross earnings because there would be none in that county, yet, all of the electricity would be supplied through this main line. Assuming, again, that the electric supply was brought to the Tulare County border by a transmission line wholly without the county, and the entire current distributed to consumers in Tulare County through a system of wires wholly on private rights of way, clearly neither county could claim any gross receipts, for in the one county no revenue would arise

from the conduit on the highway, and in the other no franchise would be owned or exercised.

If the electric plant is all within the borders of a single municipality and entirely distributed from transmission lines covered by the franchise no complications can arise. The entire proportion of the earnings attributable to the transmission and delivery of electricity belongs to the gross receipts from which the two per cent shall be paid. Immediately the operation of the business passes such limitation the complications begin, if we treat the separate franchises as controlling the income from all electricity passing through the part of the system covered by such franchise. We may have a condition where the transmission line merely crossing a street from the power-house, under a franchise, to connect with privately owned rights of way over the rest of the county, would claim the same revenue from such franchise, as it would where the entire distributing system was maintained and operated over public highways.

### A PRACTICAL INTERPRETATION POSSIBLE.

Notwithstanding the difficulties suggested we are of the opinion that there is an entirely practicable and consistent interpretation of this provision of the act which will permit a fair determination and distribution of the prescribed percentage of receipts arising from the use, operation, or possession of each franchise utilized by the distributing system.

[6] It must be conceded that the purpose of the act was to impose only a two per cent charge upon the gross receipts arising from the entire franchise rights enjoyed in all the highways covered by the system, whether in one or several counties or municipalities. When the company or corporation has paid two per cent of all its earnings properly attributable to all its franchises whether covering one or more counties, it has fulfilled its obligation. It, of course, cannot concern such corporation how this amount is distributed to the various municipalities, so long as it is released from further liability. The real issue is as to the several rights of the municipalities in sharing the payments. The state is at liberty to make this distribution upon any reasonable basis it sees fit to adopt. It will be

noticed that the act in question makes no reference to compensation for the franchise over public highways from the revenues arising within the county by which the franchise was granted. If that had been the intention the very obvious way of expressing it would have been to say ''two per centum of the gross annual receipts within the county,'' instead of using the expression ''two per centum of the gross annual receipts'' arising from ''the use, operation or possession'' of the franchise. The reasonable construction of the language used is that each county or municipality is entitled to its percentage of the gross earnings arising from the use of its highway, in the proportion that the receipts arising from the use of such highways bears to the receipts attributable to all the rights of way of the entire system.

We see no reason why this cannot be estimated on a mileage basis. It may be assumed that the distributing system covers six hundred miles of easements. The proportion of the gross receipts derived from and chargeable to the use of the distributing system should be credited to this entire mileage. One-third of this mileage may extend over private rights of way which are not subject to any franchise liability. The remaining two-thirds of the mileage covered by county franchises is entitled to two-thirds of the two per cent of the gross amount, and each county is entitled to the percentage of this two-thirds in the proportion that the mileage of its franchises bears to the total mileage covered by all the franchises.

It may be argued that there is no authority under the law for such mileage apportionment. There is at least some analogy for this solution of the difficulty by the terms of the act under consideration.

Section 4 makes the following provision: ''In case the franchise shall be an extension of an existing system of street railroad, then the gross receipts shall be estimated to be one half of the proportion of the total gross receipts of said system which the mileage of such extension bears to the total mileage of the whole system, and said estimate shall be conclusive as to the amount of the gross receipts of said extension.''

The effect of this provision is that where a new franchise is granted to permit an extension of the lines of the

street railway the percentage to be charged under the new franchise shall be on a mileage basis. We are not concerned with the fact that the section quoted refers only to street railway franchises and that it provides for a smaller percentage of gross receipts for the extension than for the original franchise. The significant point is that it determines the earning capacity of both franchises in proportion to their respective mileage.

Doubtless, the reason that a special provision was made in the matter of an extension for street railways was to permit of a discrimination against the extension as to the proportion of gross receipts chargeable to it. Indeed, no provision at all is made in the act for other extension franchises. Such extensions are practically new franchises, standing on an equal footing in the absence of such discrimination as is provided by section 4, and imposing an equal burden with the original franchise proportionate to their mileage. So it may be assumed that where one system of distribution receives contemporaneous franchise easements in several counties, these must have attributed to them equal earning powers in the matter of gross receipts according to their respective mileage.

Such a determination of the earning capacity of the variously located franchise rights is doubtless more or less arbitrary, as, in many instances, a much less quantity of the water or gas or electricity is conveyed through one part of the system than another, just as in the instance of a street railway, some parts of the line have much greater earning capacity than others. But since the state is dealing, in this phase of the matter, with the distribution of a fund among its own political subdivisions, any plan may be adopted consistent with substantial justice, and when we are confronted with the fact that no other interpretation of the act can be made without unlawfully interfering with private rights of property, it must be assumed that the one method of distribution which could be made, and which is not repugnant to the terms of the act, was the one intended by the legislature.

"A statute cannot be held void for uncertainty if any reasonable and practical construction can be given to its language. Mere difficulty in ascertaining its meaning, or the fact that it is susceptible of different interpretations

will not render it nugatory. Doubts as to its construction will not justify us in disregarding it." (*State ex rel. Crow* v. *West Side State Ry. Co., supra; People* v. *Lovren,* 119 Cal. 88 [51 Pac. 22, 638].)

The legislation for carrying out the tax amendment of 1910 to the constitution follows some such method of taxing the gross receipts of corporations, where such corporations are not operated wholly in this state. It is there provided (Stats. 1911, p. 538) that "Where such companies are operating partly within and partly without this state, the gross receipts within this state shall be deemed to be all receipts beginning and ending within this state, and a proportion based upon the proportion of mileage within the state to the entire mileage over which the business is done of all business passing through, into or out of this state." That is, where all the earnings are attributable to the operation of the business within state lines, the percentage is assessed upon the whole thereof, but where such earnings arise from operation of the system partly without the state, and therefore in another jurisdiction, the tax will be levied in proportion to the amount of mileage of the system in the respective jurisdictions.

Carrying out the analogy, the county of Tulare may collect its two percentum of all receipts of the electric company arising wholly from franchise easements within the county, and of the receipts contributed to by all other parts of the system, a proportion based upon the relative mileage of such franchises within the county to the entire mileage of the rights of way contributing to such gross receipts.

[7] In other words, the obvious policy of this law is to treat the public utility in the entire territory occupied as a single entity, and to distribute to each franchise wherever situated its two percentum of whatever portion of the gross receipts can be traced to its exclusive use, and as to all receipts arising from the indistinguishable use of all rights of way in the system, making the division in proportion to the respective mileage of the various parts.

It cannot be the purpose of the act to limit in its percentage receipts a municipality granting a franchise over its roads to such a corporation as this to gross revenue obtained in such municipality. First, because the statute

itself does not bear such a construction, and, secondly, because, as has been pointed out, it might frequently occur under such interpretation, that a county granting the use of many miles of its roads would receive no return whatever from such franchise because all of the gas or water or electricity is conveyed to and distributed and paid for in another county.   On the other hand, the statute will not bear the interpretation that all the gross revenue wherever received to which the franchise contributes, shall be chargeable with the two per cent payment under such franchise, for this might result in the collection of several such payments on the same receipts under various franchises.

In none of the cited decisions of this court for the recovery of a percentage of gross receipts claimed under franchises for use and occupation of public highways by public utilities was any question raised as to the method of determining what part of the gross receipts of the utility was attributable to any specified franchise.   In *Hanford* v. *Hanford Gas etc. Co.*, 169 Cal. 749 [147 Pac. 969], no objection was made that the receipts sought to be recovered were not the product of the use in question.   The point at issue was the claim of the corporation that, under its constitutional franchise to maintain its distributing system for light over the public streets, it could also without further authority distribute heat and power.   In *Town of Suisun City* v. *Pacific Gas & Elec. Co.*, 35 Cal. App. 380 [170 Pac. 1078], the action was brought by the city to recover a percentage of gross receipts from a franchise for light and power purposes to one Prior, who had theretofore been distributing electricity for lighting purposes under the constitutional franchise.   It was held that a grant by the city for lighting purposes was void and in conflict with the constitutional franchise, and that the obligation to pay two per cent did not arise on the electricity distributed for lighting purposes.   In *City of Oakland* v. *Great Western Power Co., supra,* the defendant company was operating over streets of the city a system for the distribution of light, heat and power.   It was occupying the streets under the constitutional franchise for distribution of electricity for lighting.   Subsequently, under the Broughton Act, it obtained a franchise for the distribution of heat and power, and still later acquired a blanket franchise from the city giving it the use of all the streets of the city for the distri-

bution of electricity for all purposes. It was held in the opinion that the latter franchises did not supersede the preceding ones and that the city of Oakland could recover nothing for the distribution of light under the constitutional franchise, could recover only the percentage allowed by the Broughton Act for the use of such streets as had been utilized for power and heat under that franchise, and could recover under the charter franchise for power and heat, only from such part of the system as had not been constructed under the Broughton franchise.

The significance of the Oakland case, so far as it applies, upholds the conclusion we have reached in the instant case, that the rights of the municipality to its percentage under a given franchise are limited to the portion of the gross receipts attributable to that particular franchise.

It is true that the decision also holds that only the receipts from electricity delivered within the city of Oakland can be considered in determining such percentage, but it appears from the opinion that the charter under which the franchise sued on was issued expressly limits the right of recovery to "the gross annual receipts resulting from the sale of electric energy delivered within the limits of the city of Oakland."

The Oakland case suggests complications which do not arise in the case at bar, inasmuch as the charter franchise provides for a four per cent, and later a five per cent, payment to the city upon the gross receipts after the first five years, while the portion of the system operated under the Broughton Act is only liable for two per cent of such gross receipts as arise from the exercise of that franchise. But one distributing system is in use, covering all of the territory, and whether an apportionment of the gross earnings at the different percentages could be made on a proportionate mileage basis which would protect the rights of the corporation may be questioned. We fail to see, though, any other method which would be at all feasible. However, we are not confronted with such a contingency in this case. The entire distributing system here is under the Broughton Act, and the only parties concerned in the distribution of the percentage payments are the respective municipalities granting franchises.

A distribution of the payments according to the relative mileage can be had within the fair intendment of the act.

The city of Dinuba, within the county of Tulare, was a claimant for a part of the franchise percentage and was made a party defendant. No appeal was taken from the judgment adverse to its claim, so a consideration of its rights in the premises is not involved.

Under the conclusions herein reached the proper action against the defendant corporation is by way of an accounting, to which the defendant and all municipalities under whose franchises this distributing system is operated are necessary parties, in order to determine the entire liability of the defendant, and the proportion of the two per cent payment to which each franchise is entitled.

The first step in this accounting should be to determine as a question of fact what proportion of the total annual gross receipts of the public utility should be justly accredited to its distributing system over various rights of way, as distinguished from its power plants or other producing agencies.

This will establish the fund from which the percentage of earnings ''arising from the use, operation or possession'' of the various franchise easements shall be ascertained.

The percentage of this fund to be apportioned to the respective public franchises will not include the proportion of such gross receipts of the distributing system as are attributable to the use of private rights of way occupied by the utility, as such part of the system is not subject to franchise charge. Each municipal franchise will be entitled to its two per cent of whatever portion of such fund can be shown to arise wholly from the use of the easements under such franchise, and such portion of the remaining fund as the mileage of the given franchise easement bears to the entire mileage of the distributing system contributing to such gross earnings.

We have adopted this appropriation, to the various rights of way, according to mileage, not necessarily as an exclusive method of distribution of the gross receipts, but as a practicable one where the contribution of the various franchise easements to the gross earnings cannot be otherwise determined. There may be portions of the distributing system where the entire transmission from the producing plant to the consumer is supplied through a given franchise, or is entirely supplied over private easements.

Such earnings would inure to such specific franchises or easements. There may be instances where the extent or value of the distributing system over a given right of way may indicate its earning capacity; or where the service of lateral lines may be differentiated from that of main conduits in the value of their use of the easements. In such cases these conditions should be taken into account. But where, as will often happen, contribution to the earnings of the various rights of way is general and indistinguishable, we can see no reason why the proportionate mileage basis should not be used in apportioning the statutory percentage of gross receipts.

The judgment is reversed and the cause remanded for a new trial in accordance with the conclusions herein stated.

Shaw, C. J., Shurtleff, J., Wilbur, J., Lawlor, J., Lennon, J., and Richards, J., *pro tem.*, concurred.