[S. F. No. 14951. In Bank.—October 27, 1937.]

CITY AND COUNTY OF SAN FRANCISCO (a Municipal Corporation), Appellant, v. MARKET STREET RAILWAY COMPANY (a Corporation), Respondent.

John J. O'Toole, City Attorney, Thomas P. Slevin, Deputy City Attorney, for Appellant.

William M. Abbott, Cyril Appel and Ivores R. Dains for Respondent.

SEAWELL, J.—The City and County of San Francisco brought this action to recover from defendant Market Street Railway the sum of $11,062.50, claimed to be owing to it "as and for a license tax" upon street cars operated by defendant in the city of San Francisco. The tax claimed is at the rate of $15 per annum per car. The tax is payable quarterly. The recovery herein sought is for the year commencing July 1, 1926, and for the first quarter of the year commencing July 1, 1927.

Plaintiff city prosecutes this appeal from a judgment of nonsuit entered against it. It was the contention of defendant Market Street Railway, sustained by the court below, that the collection of the municipal taxes in question could not be had by virtue of the provisions of section 14, article XIII, which was added to the Constitution in 1910. Said constitutional provision (until 1933) provided for a tax measured by a percentage of gross receipts from operation to be paid by certain enumerated companies, including street railway companies. It further provided: "Such taxes shall be in lieu of all other taxes and licenses, state, county and municipal, upon the property above enumerated [operative property] of such companies except as otherwise in this section provided; provided, that nothing herein shall be construed to release any such company from the payment of any amount agreed to be paid or required by law to be paid for any special privilege or franchise granted by any of the municipal authorities of this state." During the period herein involved the defend-

ant paid to the state the sum of $786,208.26 as a tax measured by its gross receipts. The question involved on this appeal is whether the "license tax" of $15 a car per annum which the city seeks to collect is an amount "agreed to be paid or required by law to be paid" for the franchises under which the defendant operates its cars.

The contention of defendant, sustained by the court below, was that certain of the state laws under which the city was authorized to grant the franchises in question, and the municipal orders and ordinances by which said franchises were granted, provided for certain payments to be made during the life of the franchise, and measured by a percentage of the gross receipts from operation, as a purchase price for the franchise granted. It was the purpose of the above-quoted provision to save to municipalities the right to continue to collect these payments, defendant contends. The state laws also authorized the city to exact a license or license tax of the owners of street railways not to exceed $50 per annum per car in the City of San Francisco, nor $25 in other cities. This license tax is not within the saving proviso of section 14, article XIII, defendant contends. That is, defendant draws a distinction between the purchase price of the franchise (an amount payable during the life of the franchise and measured by a percentage of the gross receipts from operation) and licenses or license taxes thereafter exacted of the owner of the franchise. Only sums due in the nature of purchase price payments are amounts "agreed to be paid or required by law to be paid *for*" a franchise, defendant contends.

The defendant operates cars in the City of San Francisco by virtue of fifty-eight franchises, granted between 1876 and 1909. Said franchises were granted under statutes of 1869–1870, 1893, and 1897 and under the 1900 charter of the City and County of San Francisco.

The first state statute conferring on municipalities the power to grant street railway franchises became effective in 1870. (Stats. 1869–1870, p. 481.) Under said acts bids were not required to be made to obtain franchises. The statute of 1893, however, required that franchises should be awarded to the highest bidder. (Stats. 1893, p. 288.) The effect of this statute was to require a cash bid. But the act of 1897 required the bid to be "for the payment in lawful money of the United States of a stated per cent of the gross

annual receipts of the person, partnership, or corporation, or other authority to whom the franchise is awarded, arising from its use, operation, or possession''. The statute further provided that no percentage should be paid for the first five years succeeding the date of the franchise, but ''thereafter such percentage shall be payable annually, and shall in no case be less than three per cent per annum upon such gross receipts. . . . '' (Stats. 1897, p. 135.)

After 1900 the City and County of San Francisco granted franchises, to continue for a term of twenty-five years, under the San Francisco charter of 1900. (Stats. 1899, p. 252, in effect January 1, 1900.) Said charter provided for award of the franchise to the person offering to pay the highest percentage of the gross receipts arising from operation. It further provided that no award should be made unless the stated percentage ''offered to be paid for the franchise'' should be at least three per cent of such gross receipts during the first five years, four per cent during the next ten years, and five per cent during the next ten years.

The franchise statutes of 1901 and 1905 (under which none of the franchises herein was granted) reverted to the system of a cash bid, but also required the successful bidder to pay two per cent of gross annual receipts during the life of the franchise. (Stats. 1901, p. 265; The Broughton Act, Stats. 1905, p. 777.) The Statutes of 1897, 1901, and 1905, expressly repealed other acts inconsistent therewith.

The acts of 1893, 1897, 1901, and 1905 are all described in their titles as acts providing ''for the sale'' of franchises. They all provide for award of the franchise to the highest bidder, as does the 1900 charter of San Francisco. Neither said statutes, nor the provision of the charter providing for grants of franchises by the city and county (art. II, chap. II, sec. 6), contain any reference to payment of licenses or license taxes by franchise holders. The earlier statute of 1869–1870, however, provided: ''The owners of every such railroad shall pay to the authorities of the city, or town or county, as a license upon each car, such sum as said authorities may fix, not exceeding fifty dollars per annum in the city of San Francisco, nor more than twenty-five dollars per annum in other cities or towns. . . . '' (Sec. 10.)

Sections 497 and 508, placed in the Civil Code in 1872 and remaining there today, also referred to license taxes. Section 497 provided for municipal grants of authority to lay

street railroad tracks "under such restrictions and limitations, and upon such terms and payment of license tax", as the city "may" provide. Section 508 provided that "each street railroad corporation *must* pay to the authorities of the city, town, county or city and county, as a license upon each car, such sum as the authorities *may* fix, not exceeding fifty dollars per annum in the city of San Francisco, nor more than twenty-five dollars per annum in other cities or towns". (Italics ours.)

Acting under the above provisions in the statute and code sections, the city in some cases placed express provisions in the orders and ordinances by which it granted franchises providing either for a "license" or "license tax" in the sum of $15 per car per annum. In some instances it was provided that no greater sum should be exacted. In other cases the grant of the franchise provided that the owner thereof should pay a "license" or "license tax" in an amount to be provided by law or fixed by the board of supervisors. Twenty of the fifty-eight ordinances granting franchises contained no reference whatever to a license, or license tax of any kind. As to those franchises which do not fix the amount of the license or license tax per car, the city claims the amount of $15 per car under the provisions of its general license tax ordinance (ordinance 5132, n. s.) providing for license taxes upon numerous businesses and callings.

Omitting from consideration for the moment the "in lieu" provision of the Constitution, there would seem to be little doubt that licenses or license taxes might be levied by the municipal authorities as respects franchises which are silent as to such exactions. ■ A franchise is property, and subject to taxation in the absence of a grant of exemption in the franchise. Mere failure to expressly provide for taxation of the franchise or of the owner thereof on account of the franchise, is not an exemption from such taxation. (*City of Springfield* v. *Smith,* 138 Mo. 645 [40 S. W. 757, 60 Am. St. Rep. 569, 37 L. R. A. 446] ; *City of Wyandotte* v. *Corrigan,* 35 Kan. 21 [10 Pac. 99] ; *City of New Orleans* v. *Orleans R. Co.,* 42 La. Ann. 4 [7 So. 59, 21 Am. St. Rep. 365] ; *Newport News & O. P. Ry. etc. Co.* v. *City of Newport News,* 100 Va. 157 [40 S. E. 645].)

■ As noted above, defendant street railway contends that amounts exacted per car as licenses or license taxes are not amounts "agreed to be paid or required by law to be

paid *for*" the franchise within the meaning of section 14, article XIII of the Constitution; that said proviso was intended to preserve to municipalities only the right to continue to collect the percentage of gross receipts bid for the franchise, and which constitutes a sort of purchase price therefor. In this analysis the state tax provided by section 14, article XIII of the Constitution, is "in lieu" of the license or license tax per car which the city seeks to collect herein, and the city is without right to demand payment thereof.

Appellant city and county emphasizes the contractual nature of a franchise in asserting that its claim for $15 per car per annum is an "amount agreed to be paid . . . for" the franchise. By accepting the franchise and commencing operations thereunder, and in some cases by written acceptance of the franchise filed with the authorities, the franchise grantee has bound himself to the terms of the grant, including provisions therein with regard to licenses and license taxes. However, even in the absence of provision for a tax or license in the grant of franchise, as in the case of twenty of the franchises held by defendant, the grantee, in the absence of express exemption from taxation in the grant, is subject to taxes in respect of this species of property, as of other types of property. (Cases cited, *supra*.) It may be questioned whether an obligation to pay a license or license tax may truly be said to be contractual when it will devolve upon the grantee of the franchise without regard to any provision therefor in the grant. It may, perhaps, be said to be contractual in the sense that it arises by virtue of the franchise grantee having accepted the franchise, which is a contract. (*Tulare County* v. *City of Dinuba*, 188 Cal. 664, 670 [206 Pac. 983].) But nevertheless we are of the view that license or license taxes are not amounts agreed to be "paid for" franchises within the meaning of section 14, article XIII of the Constitution. We shall discuss this proposition further after first noting respondent's contention that the license or license taxes claimed by the city are not "required by law" to be paid.

The statute of 1869–1870 provides that the owners of street railroads "*shall* pay" as a license upon each car such sum as the authorities "*may* fix", not exceeding $50 a car in San Francisco. Section 508 of the Civil Code, provides that street railroad corporations "*must* pay" as a license upon each car, such sum as the authorities "*may* fix", repeating the

$50 limitation for San Francisco. (Italics ours.) In neither case is there any requirement that the municipal authorities fix any sum as a license or license tax, defendant points out. However, the state provisions do require that franchise holders *shall* and *must* pay such sums, not exceeding the fixed limit, as the city authorities may fix as a license. We think it must be said that when the city has acted to fix the amount of this license or license tax, either by provisions of the order granting the franchise or by general ordinance, that the state law provisions "require" that the amounts thus fixed be paid. But although the amount of the license is "required by law to be paid", or is "agreed to be paid", we are of the view that it is not "paid for" the privilege or franchise within the constitutional saving proviso.

There is a clear distinction between the amount agreed to be paid for property, or required by law to be paid for it, that is, the purchase price, and taxes thereafter levied upon it or exacted of the owner in respect of said property. This distinction exists even though the amount to be "paid for" the property is a percentage of the gross receipts from operation, payable during the life of the franchise. ▉ Payments of percentages of the gross receipts under the statutes providing for grants of franchises to the highest bidder are not taxes or licenses within the meaning of section 14, article XIII of the Constitution. (*County of Tulare* v. *City of Dinuba*, 188 Cal. 664, 670 [206 Pac. 983].) The titles of the acts of 1893, 1897 and 1901, *supra*, all describe said acts as providing for the *sale* of franchises. The acts in each case, and the San Francisco charter of 1900 also, provide for award of the franchise to the highest bidder, that is, for a sale of the franchise. A sale implies a purchase price, which has been variously set as a sum payable in cash upon the award of the franchise, as a percentage of the gross receipts from operation during the life of the franchise, or as a combination of both. The San Francisco charter of 1900 requires the percentage "offered to be paid *for* the franchise" to be at least three per cent of the gross receipts from operation during the first five years. Neither said section of the charter (art. II, chap. II, sec. 6) referring to the grant of franchises, nor the provisions of any of the above statutes providing for competitive bids and sale of the franchise contain any reference to a license or license tax.

By virtue of the fact that the city is the seller of the franchise, under authority from the state, as well as the tax collecting authority, the amount "paid for" the franchise, as well as the license or license tax per car, if collectible by the city, is due the same entity. And in some cases the grant of franchise has limited the amount which the city may thereafter collect per car. But the license or license tax does not thereby become an amount "paid for" the franchise. In regard to the sale of, and amount to be *paid for*, the franchise, the requirement is for award to the highest bidder, with limitations under some of the statutes and under the charter as to the minimum bid which may be accepted. As to the license per car, authorized to be exacted under separate statutes, or, in the case of the San Francisco charter, under separate charter section, the law provides not a minimum, but a maximum beyond which the city cannot go in its exaction. The charge per car is described in the statutory provisions by which it is authorized to be exacted (Stats. 1869–1870; secs. 497, 508, Civ. Code) as a license tax and as a license. In its complaint the city prays for recovery of sums due "as and for license tax". We conclude that the amounts herein sued for are not amounts "agreed to be paid or required by law to be paid *for*" the franchises, within the proviso of section 14, article XIII of the Constitution, preserving to municipalities the right to collect such amounts.

As an additional argument in support of its contention, upheld by us, defendant has referred to the 1910 Report of the Commission on Revenue and Taxation, which framed the constitutional provisions. After pointing out that under the constitutional amendatory provisions street railways must pay to the state four per cent of their gross receipts annually, the commission says: "Street car companies must pay, as now the 2% of their gross receipts to the cities under the Broughton Act [Stats. 1905, p. 777, one of the statutes providing for 'sale' of franchises, and for payment of percentage of gross receipts from operation to the local authority granting the franchise] for the enjoyment of their franchises in the public streets, and this is in addition to the 4% paid to the state." (Page 18.) Defendant states: "By the express mention of the fact that street car companies would remain under the obligation to pay pursuant to the Broughton Act and by refraining to state that such companies should likewise remain under the obligation to pay license taxes, the

purpose to relieve street car companies of the payment of license taxes is clearly exhibited.''

■ Plaintiff suggests that the licenses per car remain collectible by the city notwithstanding section 14, article XIII of the Constitution, for the reason that said charges per car are not taxes ''upon property''. This contention has been decided adversely to plaintiff in several cases, in which it has been held that the gross receipts tax exacted under section 14, article XIII, is in lieu of licenses and license taxes, as well as in lieu of taxes on property. (*City of San Francisco* v. *Pacific Tel. & Tel. Co.*, 166 Cal. 244 [135 Pac. 971]; *Hartford Fire Ins. Co.* v. *Jordan,* 168 Cal. 270, 283 [142 Pac. 839]; *Pacific Gas & Elec. Co.* v. *Roberts,* 168 Cal. 420 [143 Pac. 700].)

The judgment is affirmed.

Waste, C. J., Curtis, J., Shenk, J., and Nourse, J., *pro tem.,* concurred.