Opinion
 

 CROSKEY, Acting P. J.
 

 Plaintiffs Consolidated Fire Protection District of Los Angeles County and P. Michael Freeman, who is not only the forester and fire warden of Los Angeles County, but also the owner of real property within the fire protection assessment district (collectively Fire District), filed a complaint to validate (1) a resolution by Fire District’s.governing board, which resolution permitted a levy of a fire suppression assessment without any voter approval of the assessment, and (2) the levy and collection of such assessment.
 

 Defendants, the Howard Jarvis Taxpayers’ Association, David Hensley and Joel Silverman (collectively Taxpayers’ Association),
 
 [1]
 
 answered the complaint and alleged that the resolution was passed after the effective date of Proposition 218 and the effective date of article XIII D of the California Constitution, and that it therefore envisioned a violation of the California Constitution. Taxpayers’ Association alleged that the resolution was not adopted according to law, and the complaint failed to state a cause of action because the ordinance and subject resolution had been superseded by lawfully enacted provisions of the California Constitution.
 

 Taxpayers’ Association moved for judgment on the pleadings, and Fire District sought leave to amend its complaint. After determining that the proposed amendments would not cure the defects in Fire District’s validation action, the trial court granted the motion for judgment on the pleadings and entered judgment in favor of Taxpayers’ Association. Fire District filed this timely appeal from the judgment.
 

 Factual and Procedural Background
 
 [2]
 

 Fire District is a public agency organized, existing and exercising essential governmental functions under the laws of the State of California. The
 
 *215
 
 Board of Supervisors of the County of Los Angeles (the Board) is ex officio the Board of Directors of Fire District (Fire District’s governing body). P. Michael Freeman is the forester and fire warden of Los Angeles County, and a taxpayer whose property is subject to the benefit assessment at issue in this action.
 

 In 1991, the Board adopted Ordinance No. 91-0108, codified as chapter 4.92 of the Los Angeles County Code (Ordinance 91-0108), under the authority of Government Code section 50078 et seq. Pursuant to Ordinance 91-0108, the Board was authorized to levy, for a term of 20 years, beginning in fiscal year 1991-1992, an annual benefit assessment (the assessment) for the express purpose of establishing and raising a stable source of supplementary funds to provide and fund fire suppression services, such as equipment and personnel, within the unincorporated and incorporated areas served by Fire District.
 

 Fire District’s fiscal year begins July 1 of each year, and ends on June 30 of the succeeding year. On or before August 31 of each year, or such other date as the Board may determine, the Board is required to levy and fix the amount of the assessment for the next fiscal year, with such assessment not to exceed the maximum amount per parcel allowed by Ordinance 91-0108. Under Ordinance 91-0108, certain properties are exempt from the assessment. For example, property owned by a federal, state or local government agency, if used for governmental purposes, is exempt.
 

 On November 5, 1996, the voters of the State of California approved an initiative measure entitled “Right to Vote on Taxes Act,” which was designated as Proposition 218 on the statewide ballot (Proposition 218). Among other provisions, Proposition 218 added a new article to the California Constitution, article XIII D. Section 5 of article XIII D provides that beginning July 1, 1997, all existing assessments, except for certain exceptions not applicable to the assessment here, must comply with the procedures and approval process set forth in section 4 of article XIIID as a prerequisite to their collection on and after July 1, 1997. Section 4 also provides that property owned or used by a local, state, or federal public agency shall not be exempt from an assessment unless it is proven by clear and convincing evidence that the publicly owned property in fact receives no special benefit. Thus, in the absence of such evidence, section 4 of article XIII D requires publicly owned property previously exempt from assessment to be made subject to it, a provision which conflicts with Ordinance 91-0108’s provisions as to exemption from assessment.
 

 
 *216
 
 Section 4 of article XIII D of the California Constitution also prescribes a landowner balloting procedure, weighted according to the proportional financial obligation of the affected property, as a condition to levy and collection of any assessment. If the ballots submitted in opposition to an assessment exceed those submitted in favor, the assessment may not be imposed, and if there is not a successful balloting procedure in favor of an assessment, section 5 of article XIII D prohibits the levy and collection of the assessment on and after July 1, 1997.
 

 On December 17, 1996, the Board adopted a resolution to fix the amount of the assessment to be levied and collected in fiscal year 1997-1998. Also on December 17, 1996, Fire District filed a complaint, pursuant to Government Code section 50078 et seq. and Code of Civil Procedure section 860 et seq.
 
 [3]
 
 , to validate the levy and collection of the assessment on and after July 1, 1997, and the adoption of the December 17, 1996 resolution. Fire District named as defendants in the validation action all persons interested in the matter of the validity of these matters.
 

 On January 21, 1997, Taxpayers’ Association answered the complaint and alleged that the December 17, 1996, resolution envisioned a violation of the California Constitution as amended by Proposition 218, and that hence neither the levy and collection of the assessment nor the adoption of the resolution could be validated. Defendants’ prayer for relief asked that the complaint be dismissed for failure to state a cause of action or controversy, and that Ordinance 91-0108 be declared invalid on its face as being in conflict with, and preempted by, the general laws of the State of California as expressed in article XIII D of the California Constitution.
 

 On January 29, 1997, Fire District made an ex parte application for calendar preference, to set a trial date, and to establish a briefing schedule. Its request was granted, trial was set for February 28, 1997, and the trial court set an expedited briefing schedule for trial briefs. Taxpayers’ Association then applied for an order shortening time within which to file and serve a motion for judgment on the pleadings. On February 4, 1997, the trial court denied that application, but granted Taxpayers’ Association leave to incorporate its arguments for judgment on the pleadings into its trial brief, for consideration by the court at time of trial, which was continued to March 3, 1997.
 

 
 *217
 
 Taxpayers’ Association did, in fact, include the points and authorities in support of its motion for judgment on the pleadings in its trial brief, and Fire District responded with a memorandum of points and authorities in opposition to Taxpayers’ Association’s request for judgment on the pleadings. This opposition did not request an opportunity to amend Fire District’s complaint.
 

 On March 3, 1997, the first day of trial, the trial court granted judgment on the pleadings in favor of Taxpayers’ Association. After hearing the basis for the trial court’s decision, and reviewing the tentative ruling, Fire District sought leave to amend its complaint to specifically allege the existence of contractual relationships between Fire District and its taxpayers and between Fire District and other public entities, even though it stated that it believed that such an allegation was unnecessary. The trial court denied the request for leave to amend, noting that the proposed amendments would not cure the defects in Fire District’s validation action. Judgment was entered on May 7, 1997, and Fire District filed this timely appeal from the judgment. Meanwhile, on June 3, 1997, the voters in Fire District approved a special tax for fire suppression services.
 
 [4]
 

 Contentions on Appeal
 

 Fire District contends that the trial court erred by (1) granting judgment in favor of Taxpayers’ Association despite the fact that (a) Proposition 218 constitutes an unconstitutional impairment of the contractual obligation created by Ordinance 91-0108, and (b) Proposition 218 constitutes an unconstitutional referendum, and by (2) refusing to allow Fire District to amend its complaint before granting Taxpayers’ Association’s motion for judgment on the pleadings. Taxpayers’ Association disputes these contentions.
 

 
 *218
 
 Discussion
 

 1.
 
 Mootness
 

 (1) As a preliminary matter, after noting the parties’ references to the June 3, 1997 voter-approved special tax for fire suppression services, we asked the parties to brief the issue of whether this appeal was thereby rendered moot. In addition, we granted Fire District’s request for judicial notice of materials related to the special tax election and its results. After reviewing the parties’ letter briefs on the issue of mootness and the materials subject to judicial notice, we conclude that the issue of the validity of the levy and collection of the fire assessment, and of the resolution authorizing such levy and collection, is
 
 not
 
 moot as a result of the voters’ approval of the special property tax approved on June 3, 1997.
 

 It is readily apparent that the special tax election was a defensive measure undertaken to protect Fire District’s ability to fund its activities in the event its 1997-1998 resolution and levy and collection of the 1997-1998 assessments could not be validated. Thus, in resolving to provide for the special tax election, the Board also resolved that, in the event the special tax was approved, “[i]n any fiscal year, the amount of the special tax levied against any parcel shall be reduced by an amount equal to the amount of the benefit assessment, if any, levied against such parcel in such fiscal year pursuant to Ordinance 91-0108 (codified as Chapter 4.92 of the Los Angeles County Code).” (Res., § 7.) In other words, Fire District’s right to collect assessments pursuant to Ordinance 91-0108 remains relevant because such sums, if collectible, would be used in lieu of the special property tax. Furthermore, the special property tax was not a complete replacement for the assessments pursuant to Ordinance 91-0108, because the special tax and the assessment do not apply to the same parcels, given the public property exemptions provided by Ordinance 91-0108.
 

 While it is true that the voter’s pamphlet for the special tax election stated that Proposition 218 had “invalidated the existing assessment,” that was, in fact, the status of the 1997-1998 assessment at the time of the election, because the trial court had entered judgment in favor of Taxpayers’ Association. Given Fire District’s appeal from the judgment, and the resolution’s provision that the special tax would be reduced by any benefit assessments levied pursuant to Ordinance 91-0108, it is clear that Fire District did not waive its right to contest the propriety of the judgment, and that the issue of its right to levy and collect assessments without voter approval pursuant to Ordinance 91-0108 for the 1997-1998 fiscal year and for the remaining portion of the 20-year term is not moot.
 

 
 *219
 
 2.
 
 Standard of Review
 

 (2) A motion for judgment on the pleadings performs the function of a general demurrer; in other words, it admits the truth of all material facts pleaded.
 
 (Virginia G.
 
 v.
 
 ABC Unified School Dist.
 
 (1993) 15 Cal.App.4th 1848, 1852 [19 Cal.Rptr.2d 671].) In addition to the facts alleged in the complaint, the court may consider matters which may be judicially noticed, including court records.
 
 (Ibid.)
 
 The standard of appellate review of a judgment on the pleadings is, therefore, identical to that of a review of a judgment following the sustaining of a demurrer.
 
 (Ibid.)
 
 In the case of either a demurrer or a motion for judgment on the pleadings, leave to amend should be granted if there is any reasonable possibility that the plaintiff can state a good cause of action.
 
 (Ibid.)
 
 Where a demurrer is sustained or a motion for judgment on the pleadings is granted as to the original complaint, denial of leave to amend constitutes an abuse of discretion if the pleading does not show on its face that it is incapable of amendment.
 
 (Ibid.)
 

 3.
 
 The Trial Court Did Not Err by Concluding That Fire District’s Complaint Failed to State a Cause of Action
 

 (3) The purpose of the validation statutes (Code Civ. Proc., § 860 et seq.) is to provide a simple and uniform method for testing the validity of government action.
 
 (Moorpark Unified School Dist.
 
 v.
 
 Superior Court
 
 (1990) 223 Cal.App.3d 954, 960 [273 Cal.Rptr. 18];
 
 Green
 
 v.
 
 Community Redevelopment Agency
 
 (1979) 96 Cal.App.3d 491, 500-501 [158 Cal.Rptr. 126].) (4a) The validity of Fire District’s assessment for the 1997-1998 fiscal year, made by resolution and without voter approval after the passage of Proposition 218, was, and is, purely a question of law, given the fact that Fire District conceded below that none of the exceptions to California Constitution, article XIII D applied to the assessment. Thus, if the facts alleged in Fire District’s.complaint showed that, as a matter of law, the assessment was invalid, then Fire District was not entitled to a judgment in its favor, and judgment on the pleadings in favor of Taxpayers’ Association was proper. For the reasons discussed below, we conclude that the trial court properly entered judgment in favor of Taxpayers’ Association.
 

 a.
 
 Proposition 218, as Applied to the Assessment, Does Not Impair Any Cognizable Obligation of Contract
 

 Fire District contends that it is well-established law that a benefit assessment, once levied, constitutes a contract between the government agency which levied it and the property owners whose lands are subject to the assessment. According to Fire District, once the benefit assessment has been
 
 *220
 
 levied, the property owners’ rights under this “assessment contract” become vested, and any subsequent law which adversely affects a substantial, as opposed to minor, vested right of the property owner under such contract is an unconstitutional impairment of the “assessment contract,” in violation of article I, section 10, clause 1 of the United States Constitution and article I, section 9 of the California Constitution.
 
 [5]
 
 Fire District contends that because the effect of California Constitution, article XIII D is the complete abrogation of the “assessment contract” here, there is an impermissible substantial impairment which violates the state and federal constitutional provisions against impairment of contracts.
 
 [6]
 

 However, the cases cited by Fire District in support of this proposition are cases in which the constitutionally protected contractual relationship was the relationship between the property owners and the bondholders who purchased bonds issued to represent the assessments,
 
 not
 
 the relationship between the property owners and the taxing authority. The relevance of distinguishing between the various parties involved in the levy and collection of assessments to pay bonded indebtedness (the bondholders, property owners and taxing entities) was explained in
 
 Call
 
 v.
 
 Feher
 
 (1979) 93 Cal.App.3d 434 [155 Cal.Rptr. 387]: “The levying of an assessment and issuance of bonds are made with or without the agreement of the landowner. Land is assessed not because of an agreement but because of the lien-levy procedure under the applicable law.
 
 The only true contract is the bond between the issuing entity and the bondholder to which the landholder is not a part. Sutter Basin Corp.
 
 v.
 
 Brown
 
 (1953) 40 Cal.2d 235, 241 [253 P.2d 649], cited by defendants, and cases cited in that opinion[,] apply contract law concepts but only to prevent the government entity from changing the terms of the assessment and unconstitutionally impairing the obligations of the contract
 
 once bonds have been issued.” (Id.
 
 at p. 445, italics added.)
 

 Fire District contends
 
 Call
 
 v.
 
 Feher, supra,
 
 93 Cal.App.3d 434, is inapplicable here, because it involved vested development rights and was decided under precedent related to the rights of land developers, not under precedent related to the rights of assessees, and because, as a Court of Appeal decision, it cannot supersede the rule of law in the California Supreme Court cases cited by Fire District, i.e.,
 
 County of Los Angeles
 
 v.
 
 *221
 

 Rockhold
 
 (1935) 3 Cal.2d 192 [44 P.2d 340, 100 A.L.R. 149],
 
 Chapman
 
 v.
 
 Jocelyn
 
 (1920) 182 Cal. 294 [187 P. 962],
 
 Jeffreys
 
 v.
 
 Point Richmond Canal etc. Co.
 
 (1927) 202 Cal. 290 [260 P. 548],
 
 County of San Diego
 
 v.
 
 Childs
 
 (1932) 217 Cal. 109 [17 P.2d 734],
 
 City of Los Angeles
 
 v.
 
 Aldrich
 
 (1937) 8 Cal.2d 541 [66 P.2d 647], and
 
 Loew’s Inc.
 
 v.
 
 Byram
 
 (1938) 11 Cal.2d 746 [82 P.2d 1].
 

 We have reviewed the cases relied upon by Fire District, and the most that can be said of them is that some state that an assessment
 
 itself,
 
 as well as any bond issued upon such assessment, is a contract. (See, e.g.,
 
 Chapman
 
 v.
 
 Jocelyn, supra,
 
 182 Cal. at p. 297.) But this begs the question of whether an “assessment contract” between a taxing entity and the taxed property owners is the kind of contractual obligation protected by the federal and state constitutional prohibitions against the impairment of contracts. The answer to this question is “No.”
 

 “It is, of course, established law that the vested rights of an individual or corporation under an executed franchise are contractual and that such rights cannot be impaired by any subsequent enactment of the state, under the contract clause of the federal constitution, section 10, article I, forbidding the enactment by the states of any law impairing the obligation of contracts. [Citations.] [ft
 
 But the inhibition of this provision of the federal constitution does not extend to the waiver or modification of any rights accruing to the agencies of the state in their governmental capacity by action of the people through constitutional amendments or by legislative enactment.
 
 [Citations.] H [It must be conceded], then, [that the state has] the power . . . to terminate the right of a county to enforce the collection of a percentage of a corporation’s receipts under [a previously executed] franchise . . and that the right of counties to continue to make such collections is not preserved by [the constitutional proviso against the impairment of contract].”
 
 (County of Tulare
 
 v.
 
 City of Dinuba
 
 (1922) 188 Cal. 664, 669 [206 P. 983], italics added.) Clearly, it is only the contractual relationship created between
 
 bondholders
 
 on the one hand, and assessed property owners or the taxing entity on the other, which is constitutionally protected against impairment. (See, e.g.,
 
 County of Los Angeles
 
 v.
 
 Rockhold, supra,
 
 3 Cal.2d at p. 201 [“ ‘when valid proceedings for improvements by special assessment have been completed
 
 and bonds have been issued to represent the assessments, a contractual relation between the property owner and the bondholder has been established.
 
 ... It follows that a law enacted after such contract is made, and which materially alters the remedy of the bondholder to enforce his lien by means of a sale,
 
 or the rights of the owner [against such enforcement by
 
 
 *222
 

 the
 
 bondholder] under the law existing at the time the bond was issued, cannot apply to previous contracts . . .” ’ ” (italics added)].)
 
 [7]
 

 Fire District acknowledges that there are “some cases” in which it was held that a change in an “assessment contract,” i.e., a change in the relationship between taxpayers on the one hand and, on the other hand, the taxing entity and the bondholders, did not constitute an unconstitutional impairment of contract, e.g.,
 
 County of San Bernardino
 
 v.
 
 Way
 
 (1941) 18 Cal.2d 647 [117 P.2d 354], in which it was held that a change which results in a direct material advantage to taxpayers does not impair the taxpayers’ contract rights. Fire District asserts that such cases are inapplicable here, however, because (1) the effect of California Constitution, article XIII D is the complete abrogation of the “assessment contract,” not simply a minor change (which it apparently views as a
 
 disadvantage
 
 to the taxpayers), and (2) these cases involve general principles of contract law, and thus, for example, upheld changes in “assessment contracts” after the particular taxpayers in question “expressly consented” to “modifications” of the “assessment contract.”
 
 [8]
 

 Fire District misreads the holdings in these cases. For example, in
 
 County of San Bernardino
 
 v.
 
 Way, supra,
 
 18 Cal.2d 647, a road improvement district (district) had been organized in 1927. Bonds of this district were issued and were to mature annually over a 20-year period. The outstanding bonds were payable from special assessments levied annually in accordance with the assessed value of the land. After some 13 years of the 20-year period had passed, more than 90 percent of the assessed parcels were delinquent in sums owed both for general taxes and for the assessments to pay district’s bonds. To remedy this problem, the county’s board of supervisors voted to refund
 
 *223
 
 the district’s outstanding indebtedness by taking the following actions: (1) canceling all district’s levied but unpaid ad valorem assessments; (2) calling for the surrender and cancellation of any outstanding bonds and interest coupons; (3) canceling all delinquent general taxes on parcels in the district; and (4) levying a refunding assessment and then issuing refunding bonds in settlement of district’s outstanding bonds. (18 Cal.2d at p. 651.) This process would reduce the assessment indebtedness of district’s taxpayers by approximately two-thirds.
 
 (Id.
 
 at p. 666.)
 

 Way, the county surveyor, was directed to prepare a survey of the property and to make an assessment to carry out this last step. Way refused to comply, and the board of supervisors instituted a proceeding for a writ of mandamus to compel his compliance, and to thereby also obtain an adjudication that the refunding process was valid and constitutional. Way contended, in relevant part, that the legislation under which district’s original bonds were canceled and new, refunding bonds were issued (The Refunding Assessment Bond Act of 1935), was unconstitutional under both the federal and state Constitutions because the cancellation of delinquent taxes levied for payment of general obligation bonds not only impaired the bondholders’ contract in respect to their security, but also violated the
 
 taxpayers’
 
 contractual rights which had been created by the issuance of district’s bonds. (18 Cal.2d at p. 661.)
 
 [9]
 

 As to the bondholders, the California Supreme Court held that their security remained fully protected, and, in fact, that the refunding proceeding would
 
 benefit
 
 them by canceling delinquent and uncollectible taxes while restoring property to the tax roll so that taxes for subsequent years would be paid. (18 Cal.2d at p. 664.) More relevant to the point with which we are faced with here, the court also held, as to the taxpayers, that the
 
 taxpayers’
 
 contractual rights were
 
 not
 
 unconstitutionally impaired, because the refunding process did not operate in any way to prejudice the taxpayers.
 
 (Id.
 
 at pp. 664-665.) Specifically, the court noted that although cancellation of levied and delinquent taxes would necessitate an additional levy on all taxable property in all other districts (e.g., school and city districts), which would correspondingly increase the taxpayers’ liability in violation of their contract, this would only constitute an impairment of contractual obligations if there was any likelihood such delinquent taxes would ever be collected. However, in actuality such delinquent taxes were uncollectible, and thus cancellation of the taxes was an important contributing factor in effectuating
 
 *224
 
 the settlement of the outstanding indebtedness of the road improvement district in a way which lightened (by two-thirds), rather than increased, the burden on the taxpayers.
 
 (Id.
 
 at p. 665.) As the court noted:
 
 “It is obvious that the taxpayers cannot be prejudiced by any diminution of their obligations. Where the change made in the existing law by the subsequent legislation redounds to the material advantage of the taxpayers, there is no impairment of the taxpayers’ contract rights.
 
 [Citation.]”
 
 (Id.
 
 at p. 666, italics added.)
 

 Bearing in mind that when the court in
 
 County of San Bernardino
 
 was talking about the taxpayers’ contractual obligations, it was speaking of the obligations borne by the taxpayers and owed to
 
 the bondholders,
 
 not to the taxing authority; in addition, it is clear that the holding in
 
 County of San Bernardino,
 
 which related to the diminution of
 
 taxpayers’
 
 obligations, did
 
 not
 
 make any distinction between a change which results in a minor change in the taxpayers’ obligations and a change which completely abrogates such obligations. Thus, presumably, if appropriate refunding legislation had allowed the board of supervisors in
 
 County of San Bernardino
 
 to cancel the original bonds and replace them with refunding bonds, for which an incremental increase in the local
 
 sales
 
 tax was adopted, thus removing any ad valorem assessments from the taxpayers’ real property and thereby
 
 totally
 
 abrogating the “assessment contract” between the taxing authority and the taxpayers, no constitutionally protected contractual obligations of the taxpayers, as opposed to the bondholders, would have been impaired.
 

 The bottom line here is that there simply is not any contract between Fire District and its taxpayers which creates the kind of vested contractual rights which are subject to the constitutional proscription against the impairment of contractual obligations; instead, there is just an ordinance, which is presumed not to create private contractual or vested rights.
 
 (Walsh
 
 v.
 
 Board of Administration
 
 (1992) 4 Cal.App.4th 682, 697 [6 Cal.Rptr.2d 118].) Under such ordinance, Fire District’s governing body has the absolute discretion to reduce any assessment to zero. (Ord. 91-0108, § 4.92.060.) Furthermore, Ordinance 91-0108 does not promise any particular level of fire protection service, nor does it promise any particular number of fire stations will be opened and staffed. Thus, if Ordinance 91-0108 is really an “assessment contract” as Fire District suggests, the taxpayers would be hard-pressed to sue for breach of contract or specific performance, given the lack of any specific promises given by Fire District in exchange for the levied assessments. In addition, Fire District does not even have any duty to taxpayers, legally enforceable in tort, let alone in contract, to provide them with any fire suppression services at all. (See Gov. Code, §§ 850, 850.2, 854;
 
 Cochran
 
 v.
 
 Herzog Engraving Co.
 
 (1984) 155 Cal.App.3d 405 [205 Cal.Rptr. 1]
 
 *225
 
 [causes of action against city for death resulting from fire were barred by Government Code sections 850, 850.2 and 854, which provide immunity for injuries caused by failure to make an inspection or by making an inadequate or negligent inspection, for unreasonable failure to maintain adequate fire protection service, and for injuries resulting from condition of protection, equipment or facilities];
 
 Vedder
 
 v.
 
 Imperial County
 
 (1974) 36 Cal.App.3d 654 [111 Cal.Rptr. 728] [Government Code section 850 and 850.2 are designed to provide immunity to a public entity from consequences which might otherwise result from its political decision to provide, or not to provide, fire protection to the public generally, and the extent to which such fire protection is in fact provided].) An alleged contract, the supposed benefits and burdens of which can only be enforced by one party and not the other, is clearly not a contract at all. As noted above, the “assessment contract” here is not a contract, it is an ordinance, and an ordinance may be repealed through the initiative process.
 
 (Santa Clam County Local Transportation Authority
 
 v.
 
 Guardino
 
 (1995) 11 Cal.4th 220, 242 [45 Cal.Rptr.2d 207, 902 P.2d 225].)
 

 b.
 
 Proposition 218, as Applied to the Assessment, Does Not Constitute an Unconstitutional Referendum
 

 Fire District also contends that the balloting procedures required as a condition for the continued collection of the assessment constitute an illegal referendum pursuant to article II, section 9 of the California Constitution. However, voter approval requirements as a precondition for the imposition of future taxes do not constitute the referenda proscribed by article II.
 
 (Santa Clara County Local Transportation Authority
 
 v.
 
 Guardino, supra,
 
 11 Cal.4th at pp. 247-254).) In
 
 Guardino,
 
 the local taxing authority argued that the voter approval requirement imposed by Proposition 62
 
 [10]
 
 was an unconstitutional referendum. (11 Cal.4th at pp. 238-247.) The Supreme Court disagreed and held that the voter approval requirement under Proposition 62 was not an exercise of legislative power through either initiative or referendum, but was instead a valid condition imposed on the local agencies’ taxing authority. (11 Cal.4th at pp. 247-254.) The court determined that, pursuant to article XIII, section 24 of the California Constitution, the taxing authority of local agencies is not inherent, but exists only to the extent granted by the Legislature, and that the Legislature validly may prescribe the terms and conditions under which local governments may exercise that taxing power, e.g., it may impose a requirement of prior local voter approval. (11 Cal.4th
 
 *226
 
 at pp. 248-250.) Of particular relevance here, the
 
 Guardino
 
 court also held that the voters themselves, through the initiative process, could constitutionally impose such a legislative condition on the taxing authorities of local agencies.
 
 (Id.
 
 at p. 253.) Thus, Proposition 218’s balloting procedures as a condition to the collection of assessments are constitutional, and do not constitute an unlawful referendum.
 

 4.
 
 The Trial Court Did Not Abuse Its Discretion by Denying Fire District Leave to Amend Its Complaint
 

 Fire District finally contends that, if it had been allowed to amend its complaint to add allegations of the existence of a constructive contract between Fire District and the taxpayers, as well as allegations of the existence of express contracts between Fire District and other public entities, it successfully could have avoided a subsequent judgment on the pleadings. However, Fire District conceded that it could not allege the existence of any contracts with bondholders, and that the only “contracts” it could allege were those between itself and the taxpayers or itself and other public entities. Nothing in the record below, or on appeal, demonstrates that any such additional allegations could have given Fire District a viable cause of action, i.e., a basis upon which the trial court could have concluded that the resolution by Fire District’s governing board, which permitted the levy and collection of an assessment without any voter approval, was valid and adopted according to law after the effective date of Proposition 218 and of article XIII D of the California Constitution.
 

 Disposition
 

 The judgment is affirmed. Defendants are awarded their costs on appeal.
 

 Kitching, J., and Aldrich, J., concurred.
 

 [1]
 

 Hensley and Silverman, like Freeman, both own real property that is located within the fire protection assessment district and subject to the benefit assessment at issue in this case.
 

 [2]
 

 These facts are taken from the uncontroverted allegations of the complaint and the answer, and from the other pleadings filed in this action, as well as from facts properly subject to judicial notice.
 

 [3]
 

 Code of Civil Procedure section 860 allows a public agency to bring an action within 60 days of enactment of an ordinance or resolution to validate such matter.
 

 [4]
 

 Fire District’s governing board was advised that because it might take as long as a year to receive a final judicial decision on the validity of the assessments pursuant to Ordinance 91-0108, it would be prudent, in the interest of public safety, to seek an alternative revenue source. The special tax differs from the assessment in several ways. For example, government-owned property is exempt under Ordinance 91-0108, but not exempt under the special tax. Under Ordinance 91-0108, Fire District’s governing body can increase the maximum annual benefit assessment to an amount twice the initial assessment, and, upon making a finding of specific need, can increase the annual assessment to an amount
 
 more
 
 than twice the initial assessment. (Ord. 91-0108, § 4.92.060.) The special tax, however, cannot be increased by making a finding of need, and can only be adjusted for inflation, in an amount no more than 2 percent of the assessment per year.
 

 [5]
 

 We shall use the term “assessment contract,” as used by Fire District, to describe the general relationship between a taxing authority on the one hand and the property owners/ taxpayers subject to an assessment, on the other hand, regardless of whether bonds were ever issued to represent the assessment, and whether, therefore, there are any bondholders with contractual rights which might be impaired.
 

 [6]
 

 Fire District’s implicit assumption seems to be that the substantial impairment of the property owners’ vested rights consists of their loss of fire suppression services.
 

 [7]
 

 Thus, in
 
 County of Los Angeles
 
 v.
 
 Rockhold, supra,
 
 3 Cal.2d 192, a change in the law that purported to give bondholders a new remedy of foreclosure against the property owners was unconstitutional because it adversely affected the property owners’ rights under the contractual relationship
 
 between the property owners and the bondholders,
 
 not between the property owners and the taxing entity.
 

 [8]
 

 Fire District’s reliance on general principles of contract law is ill-advised, albeit understandable, given its need to find a contract of some kind to be impermissibly impaired by Proposition 218. If, as Fire District argues, ordinary contract principles apply to “assessment contracts,” then such “contracts” as the one here, which was created by a vote of the governing board of a taxing entity, without a vote of the property owners to be taxed, can hardly have created a contract under such basic principles, given that there is no contract in the absence of mutual assent. (Civ. Code, §§ 1550, 1565;
 
 Merced County Sheriffs Employee’s Assn.
 
 v.
 
 Merced County
 
 (1987) 188 Cal.App.3d 662, 670 [233 Cal.Rptr. 519]. See also
 
 Briarwood Properties, Ltd.
 
 v.
 
 City of Los Angeles
 
 (1985) 171 Cal.App.3d 1020, 1032-1033 [217 Cal.Rptr. 849] [“It is fundamental that in order to impair a contract,, there must be a contract, i.e., ‘an agreement of two or more minds, upon sufficient consideration to do or not do certain acts.’ [Citation.].”].)
 

 [9]
 

 This second portion of Way’s contention, of course, mirrors Fire District’s argument that the contractual rights of the taxpayers subject to its assessment are being unconstitutionally impaired by application of Proposition 218.
 

 [10]
 

 In 1986, the voters approved Proposition 62, a statutory initiative, to increase the control of the electorate over local taxation. The initiative added sections 53720 through 53730 to the Government Code. It prohibited local governments and districts from imposing any general or special tax unless and until the tax was submitted to, and approved by, a majority of the local electorate. (Gov. Code, §§ 53722, 53723.)